**CELLCO PARTNERSHIP d/b/a Bell Atlantic Mobile**

v.

**TOWN OF DOUGLAS, et al.**

**No. Civ.A. 9811249RGS.**

United States District Court, D. Massachusetts.

Dec. 28, 1999.

David B. Wilson, Michael S. Giaimo, Robinson & Cole, Boston, MA, for Cellco Partnership.

Samuel Perkins, Brody, Hardoon, Perkins & Kesten, Boston, MA, for Town of Douglas, Lawrence Bacon, Arthur McGuinness, Paul Buma, Joseph Fitzpatrick, Jeffrey Gniadek, Adelle Reynolds.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

On June 25,1998, Cellco Partnership d/b/a Bell Atlantic Mobile (BAM) brought this Complaint against the Town of Douglas, its Building Commissioner, and the individual members of the Town's Zoning Board of Appeals (ZBA), alleging that the ZBA's June 4, 1998 denial of BAM's petition for a permit and variance to construct a 190 foot communications tower in Douglas violated the "NIMBY" provisions of the Telecommunications Act (TCA), 47 U.S.C. § 332(c)(7)(B). On June 15, 1999, BAM filed this motion for summary judgment.[1] On December 3, 1999, the court heard oral argument on the motion.

### FACTS

The following facts are undisputed. BAM is, in the peculiar argot of the TCA, a Personal Wireless Service (PWS) provider. Douglas has no telecommunications facility. It relies instead for cellular service on towers located in the neighboring communities of Webster, Oxford, Uxbridge, and Chepachet, R.I. The BAM network does not fully cover Douglas because of the Town's hilly terrain.

---

1. On January 14, 1999, the court ordered the parties to complete discovery by March 30, 1999, identify expert witnesses by April 30, 1999, complete expert depositions by May 30, 1999, and file dispositive motions by June 15, 1999. A day after BAM filed its summary judgment motion, the Town produced an "expert report" from one Edward Kreins opining that there were sites in Douglas more suitable for a communications tower than the one chosen by BAM. Kreins, however, states in the report that he is a planning consultant, not an engineer, and that the "alternatives [located] are offered from a planning perspective only and not from a radio frequency (RF) engineering or legal perspective." On July 16, 1999, BAM filed a motion to strike Kreins' report as unreliable. On September 13, 1999, the court denied the motion. The court, however, agrees with plaintiff that the report does not raise any material issue of disputed fact.

In 1997, BAM investigated sites for a telecommunications antenna in Douglas. BAM selected a site on a hill owned by Eben and Eliot Chesbrough. The hill presently supports a 60 foot tall municipal water tank enclosed by a chainlink fence. The Chesbroughs agreed to lease a 4900 square foot lot adjacent to the tank as the site for BAM's 190 foot antenna.

*Douglas's Zoning Bylaws and the Permit Process*

Section 3.01 of Douglas's zoning bylaw states that "[n]o building, structure or land shall be used for any purpose or in any manner other than as permitted and set forth in Section 3.02, Schedule of Use Regulations...." Section 3.02 lists categories of uses permitted by right or by special permit. Wireless service facilities are specifically excluded. Section 4.02 of the Bylaws imposes a maximum height of 35 feet on all structures. The Bylaw does provide for variances. A petition for a variance, however, must be approved by a unanimous vote of the ZBA. See G.L. c. 40A, §§ 9 and 15.

On January 28, 1998, BAM applied for a permit to build the tower on Chesbrough hill. On February 3, 1998, the Building Commissioner denied the application because the project required both a variance from the height restriction and a special use permit. On February 26, 1998, BAM appealed the denial to the ZBA.[2]

A hearing was held on BAM's appeal on March 27, 1998. The hearing was continued by agreement to May 1, 1998. On May 28, 1998, the three member ZBA voted two to one to deny the appeal. The ZBA's opinion was filed with the Town Clerk on June 4, 1998. It states in relevant part:

The Board finds:

1. The locus is in a Rural/Agricultural zoning district....

2. The proposed site is an area 70' X 70' adjacent to a town owned parcel that contains a 60' high 250,000 gallon water tank and the proposed tower is 194 feet from the water tank and 500 feet from other property lines....

6. In their presentation the co-applicant submitted documentation that supported the need for a site at the proposed location to bridge service gaps along Route 16 and Route 96 as well [as] other areas in the Douglas area.

7. In their presentation the co-applicant submitted documentation that indicated that no substantial health risk would be created by the proposed tower.

8. The co-applicant submitted plans with documentation to explain the necessary "fall zone" for the proposed tower which is designed to bow and fold into itself and further stated that the tower would be situated more than its height from the water tank located at the proposed site.

The Board also finds that there are special circumstances relating to the topography of the subject locus in that it is one of the highest locations in the limited area that the applicant would need to locate the proposed tower to create the mandated coverage and that there is also a tower there (water tower).

The Board further finds that the special circumstances specifically affect the particular parcel involved and do not affect other parcels in the same zoning district.

\*　　\*　　\*　　\*　　\*　　\*

The Board is divided on ... whether [the] granting of the requested relief would nullify or substantially derogate from the intent and purpose of the Bylaw.

Therefore, with Mr. Bacon and Mr. McGuinness voting to grant the requested relief and Mr. Gniadek voting to deny same, the application for a use variance and for a dimensional variance is denied.

---

2. BAM also sought a special site plan review under § 6.02 of the Bylaws.

The Site Plan Review is also denied by the same vote.[3]

On June 25, 1998, BAM filed this lawsuit.

### DISCUSSION

The Federal Communications Commission licenses PWS carriers under the TCA. See 47 U.S.C. § 332(c). Local governments retain control over the placement of communications towers subject to five limitations. They are as follows.

(7) Preservation of local zoning authority

(A) General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c)(7).[4]

██ BAM argues that the ZBA's decision violates § 332(c)(7)(B)(i)(II) and (iii) of the TCA. Specifically, BAM argues that the denial of the permit "ha[s] the effect of prohibiting the provision of personal wire-

---

**3.** In opposition to BAM's motion for summary judgment, the Town of Douglas has submitted an affidavit from Gniadek stating that he was motivated by concern that the tower "would have a very strong negative impact on the historic and aesthetic qualities of that section of Douglas." The reference to "historic qualities" is puzzling. The proposed site is not in an historical district and nothing about the existing municipal water tower exudes historical significance.

**4.** As described by the First Circuit, "[t]he statutory provision before us, 47 U.S.C. § 332(c)(7), is a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." *Amherst, N.H. v. Omnipoint Communications,* 173 F.3d 9, 13 (1st Cir. 1999).

less services" in Douglas. Moreover, BAM argues that the ZBA's opinion does not comply with the Act's requirement that it be "in writing and supported by substantial evidence contained in a written record."

BAM's second argument is dispositive. The ZBA's opinion fails to identify any reason whatsoever for the denial of BAM's petition, much less support it with substantial evidence. It simply states that while the ZBA unanimously agreed that BAM had satisfied two of the criteria for a special permit, as to the third, "[t]he Board [wa]s divided on ... whether [the] granting of the requested relief would nullify or substantially derogate from the intent and purpose of the Bylaw."

■ Recognizing that the ZBA's written decision is insufficient to satisfy § 332(c)(7)(B)(iii), the Town relies on the Gniadek affidavit for exegesis. But as BAM counters, the TCA's goal of achieving expedited review of tower-siting decisions would be totally frustrated if a Town were permitted to conceal its reasons for denying a permit until forced to do so during the discovery phase of the litigation.

As a fallback position, the Town argues that the reason for the ZBA's rejection of the petition is clear even without the Gniadek affidavit because the statement "[t]he Board is divided on ... whether [the] granting of the requested relief would nullify or substantially derogate from the intent and purpose of the Bylaw" alludes to citizen complaints about the visual impact of the tower. There is no indication in the record, however, that Gniadek voiced aesthetic concerns at the hearing or expressed agreement with citizens who did.

■ Drawing the last arrow from its quiver, Douglas argues that the ZBA's rejection of one petition cannot be construed as an outright ban on all PWS towers. This argument was addressed by Judge Boudin in *Amherst, N.H. v. Omnipoint Communications*

On appeal, the town argues that this "effect" provision was never intended to constrain individual town-permitting decisions but was directed only against "general" bans, whether explicit or implicit. There is some nominal conflict in the case law on this point, but the quarrel is more one of language than substance. Obviously, an individual denial is not automatically a forbidden prohibition violating the "effects" provision. But neither can we rule out the possibility that—based on language or circumstances—some individual decisions could be shown to reflect, or represent, an effective prohibition on personal wireless service.

Suppose, for example, that in denying an individual permit, the town zoning authority announces that no towers will ever be allowed or sets out criteria that no one could meet. The fact that the ban is embodied in an individual decision does not immunize it. It is no answer to point to the requirement that individual decisions be based on "substantial evidence," for this surely refers to the need for substantial evidence *under the criteria laid down by the zoning law itself* (e.g., for setbacks, conditions for variances, special exception requirements). See, e.g., *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494–97 (2d Cir.1999).

If the criteria or their administration effectively preclude towers no matter what the carrier does, they may amount to a ban "in effect" even though substantial evidence will almost certainly exist for the denial. See *Virginia Metronet, Inc. v. Board of Supervisors*, 984 F.Supp. 966, 970 (E.D.Va.1998). In that event, the regulation is unlawful under the statute's "effect" provision. But the burden for the carrier invoking this provision is a heavy one: to show from language or circumstances not just that this application has been rejected but that further reasonable efforts are so

likely to be fruitless that it is a waste of time even to try.

In this case, Amherst has not formally banned towers, compare *Sprint Spectrum, L.P. v. City of Medina,* 924 F.Supp. 1036, 1038–39 (W.D.Wash.1996), but rather required prior permission case by case. And on this record, there is no showing of such fixed hostility by the Board that one can conclude that further applications would be useless.

173 F.3d at 14.

Unlike in *Omnipoint,* where the town Bylaw permitted a tower to be sited in either of two zoning districts, the Douglas Bylaw does not allow a tower to be sited anywhere in Douglas. Again, Judge Boudin's comments are pertinent.

> Omnipoint's stronger claim under the "effect" provision is that even if it might propose other solutions, none has any real prospect of success before the Board because no applicant can satisfy local requirements. In a nutshell, the Amherst ordinance seemingly requires some form of permission (special exception, variance or otherwise) for any system; the requirements for a variance under state law can be made very severe by insisting that no alternative reasonable use for the land exists; and special exceptions under the Amherst ordinance have conditions so broad and general that a hostile Board might be able to find substantial evidence for every negative ruling.
>
> The concern should not be overstated, since special exceptions are a matter of right where the conditions are met, and the state courts are available to review the denial of any special exception or variance. Still, Omnipoint's claim is not frivolous. Possibly it would have a difficult time showing conclusively that there is no other use for the sites (allegedly the requirement for a use variance) or

that the towers are completely compatible with the rural image that the town seeks to foster (allegedly an element in the special exception regime). The rather mechanical application of these concepts by the Board in its March 1998 decision lends support to this concern, and the district court's own decision rested largely on the view that the Board could and likely would reject alternative proposals.

> \*    \*    \*    \*    \*    \*

> Under federal law, the town can control the siting of facilities but—as several Board members admitted—it cannot preclude wireless service altogether. Nor, in the face of a vigilant district court, can the town exhaust applicants by requiring successive applications without giving any clue of what will do the trick.

173 F.3d at 15, 17. Unlike in *Omnipoint,* there is nothing in this record to indicate that the ZBA questioned the appropriateness of the location of the proposed tower or suggested alternate designs or heights, the kinds of clues that might instruct a petitioner in the ways it might satisfy a Town's legitimate objections.[5] The decision of the ZBA therefore cannot stand.

### ORDER

For the foregoing reasons, plaintiff's motion for summary judgment is *ALLOWED.* The ZBA is *ORDERED* to issue the necessary variances and permits to allow construction of the BAM tower on the Chesbrough hill site.

SO ORDERED.

---

5. As previously discussed, the Town has failed to create a dispute of material fact as to whether there are preferable locations in Douglas for the tower. Moreover, it is significant that the Bylaw does not require that a petitioner show the absence of superior alternate sites to obtain a special use permit.