OMNIPOINT COMMUNICATIONS MB OPERATIONS, LLC, Plaintiff,

v.

TOWN OF LINCOLN, Lincoln Board of Appeals and Despena F. Billings, Buckner M. Creel, IV, Pamela S. Green, Amalie Kass, and Susan Hall Mygatt, in their capacities as Members of the Lincoln Board of Appeals, Defendants.

No. Civ.A. 99–11012–EFH.

United States District Court, D. Massachusetts.

Aug. 2, 2000.

---

Kenneth Ira Spigle, Boston, MA, for Omnipoint Communications MB Operations, LLC, plaintiff.

Joseph L. Tehan, Jr., Joel B. Bard, Kopelman & Paige, P.C., Boston, MA, for defendants.

### MEMORANDUM AND ORDER

HARRINGTON, District Judge.

### STATEMENT OF THE CASE

This matter is presently before the Court on the parties' Cross Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. This is one of the many cases arising under the Federal Telecommunications Act of 1996, 47 U.S.C. § 332 (the "TCA"). The TCA sets in opposition the interest of telecommunication companies in developing a comprehensive nationwide wireless communications network and the interest of local governments in protecting the character and nature of their localities from the unseemly proliferation of wireless communications facilities ("WCFs") which are commonly referred to as wireless towers.

The Plaintiff Omnipoint Communications MB Operations, LLC ("Omnipoint"), is a telecommunications carrier licensed by the Federal Communications Commission ("FCC") to facilitate the development of a wireless telecommunication network in furtherance of the goals of the TCA and

Omnipoint's license with the FCC.[1] The Defendant Town of Lincoln, Massachusetts (the "Town"), is an unincorporated municipality located in eastern Massachusetts which utilizes an open town meeting form of governance.[2] The five individuals named as defendants—Despena F. Billings, Buckner M. Creel, IV, Pamela S. Green, Amalie Kass and Susan Hall Mygatt—are the current members of the Lincoln Board of Appeals. The Lincoln Board of Appeals is the local governmental body which is empowered by state law with the authority to hear and decide requests for special permits and for variances for relief from local zoning regulations. *See* Mass. Gen.L. ch. 40A, § 14; Town of Lincoln, Zoning By–Law (as amended March 27, 1999) (hereinafter, the "By–Law"), §§ 20.2(c), (d).

In Count I of the Complaint, Omnipoint challenges the validity of the Town's By–Law on the ground that the By–Law has the effect of prohibiting the provision of personal wireless services within the Town in violation of Section § 332(c)(7)(B)(i)(II) of the TCA. In Counts II and III, Omnipoint challenges the April 20, 1999, decision of the Board of Appeals which denied Omnipoint's request for a special permit and/or variance to erect an 89–foot tall monopole WCF at Tracey's Towing which is located in the Town at the intersection of Bedford Road and Route 2. Omnipoint alleges in Count II that the Board of Appeals' decision violates Section 332(c)(7)(B)(i)(II) of the TCA because it has the effect of prohibiting the provision of personal wireless services. Omnipoint further alleges in Count III that the Board of Appeals' decision violates Section 332(c)(7)(B)(iii) of the TCA because it is not supported by substantial evidence contained in a written record.

For the reasons stated below, as to Count III summary judgment is granted for the defendants and denied for the plaintiff, while as to Counts I and II summary judgment is granted for the plaintiff and denied for the defendants.

## JURISDICTION

The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as these claims arise under the laws of the United States, specifically 47 U.S.C. § 332(c)(7) which provides that "anyone adversely affected by any final action or failure to act by local government that is inconsistent with the limitations [of the TCA] may seek review in any court of competent jurisdiction and the court shall hear and decide such action on an expedited basis." *Town of Amherst, N.H. v. Omnipoint Communications Enterp.*, 173 F.3d 9, 12 (1st Cir.1999) (quoting 47 U.S.C. §§ 332(c)(7)(B)(ii), (iii), (v)) (internal quotations omitted).

## STATEMENT OF OPERABLE FACTS

### Lincoln's By–Law

In April of 1997, the Town of Lincoln, acting through its Town Meeting, amended the By–Law by adding Section 12.6 which is entitled "Wireless Communications Facilities Overlay District." The purpose of this section is to regulate the placement, construction and maintenance of WCFs in a manner that preserves the Town's unique community character. *See* By–Law, § 12.6.1. Section 12.6 establishes a Wireless Communications Facilities Overlay District (the "Overlay District") to provide for the safe and appropriate siting of WCFs, while minimizing the visual and other impacts of such WCFs. *See id.* The Town's Planning Board may issue a special permit allowing the erection of a WCF

---

1. Omnipoint's license with the FCC sets strict parameters for coverage and requires that Omnipoint provide service to a large portion of its license area in a short period of time, or risk forfeiture of its license.

2. An "open town meeting" government is a somewhat uniquely New England institution in which every resident of a municipality has equal authority to vote directly upon the passage of municipal law.

upon a parcel *within* the Overlay District if the Planning Board "determines that the adverse effects of the proposed [WCF] will not outweigh its benefits to the town ..." By–Law, § 12.6.5. As such, a wireless communications provider wishing to erect a WCF within the Town of Lincoln is limited to those parcels which the Town, through its Town Meeting, has designated as part of the Overlay District.

As amended in 1999, the Town's Overlay District consists of six parcels scattered throughout the Town. Two of the parcels, identified on the Town Assessors Map as Parcel Nos. 96–2 and 103–6, are owned by the Town, and are the Department of Public Works and the Public Safety facilities, respectively. The other four Overlay District parcels, Minuteman Regional High School property (Parcel No. 19–4), the Farrington Memorial (Parcel No. 48–7), the Boston Institute of Intercultural Communications (the "BIIC") (Parcel No. 14–16), and the DeCordova Museum[3] (Parcel No. 44–2), are owned by private non-profit organizations. While in sum these six parcels constitute over 175 acres which may be used for the erection of WCFs, the parcels are situated throughout the Town in such a manner that no two parcels, other than the two Town-owned parcels, would provide wireless coverage to the same section of Town. Furthermore, the six parcels are owned by only five landowners. Minuteman Regional High School

property is located in, and would only provide coverage to, the northeastern section of the Town at the eastern end of Route 2A. The DeCordova Museum is located near Flints Pond and would provide coverage to the central section of the Town, just south of Route 2. The two Town-owned parcels are in close proximity to each other and would provide coverage to the southern section of the Town. The BIIC and the Farrington Memorial, which are located at the western and eastern ends of the Town on Route 2, respectively, would provide coverage along Route 2. The extent of the coverage which could be provided from these six Overlay District parcels is in dispute between the parties.

In addition to restricting the location of a WCF, the By–Law also places significant restrictions upon the manner in which a WCF may be constructed, as well as substantial filing requirements for obtaining a special permit. The By–Law provides that absent a significant tree canopy the height of any WCF shall not exceed sixty (60) feet above finished grade of ground elevation. If, however, there is a significant tree canopy, then the Planning Board may allow a WCF to extend twenty (20) feet above the surrounding tree canopy if, in the Board's opinion, such an increase in height would not cause a material increase in the visual impacts from the WCF.[4] *See* By–Law, § 12.6.6(b). Aside from submit-

---

**3.** At the time of Omnipoint's application to the Board of Appeals in December 1998, the DeCordova Museum site was not part of the Overlay District. The DeCordova Museum site was only added to the Town's WCF Overlay District in 1999 by vote of the Town Meeting. As originally drawn, the Overlay District had contained six parcels; however, in March 1998, the Town, by vote of its Town Meeting, removed Parcel No. 18–6 which is adjacent to the Minuteman Regional High School property (Parcel No. 19–4). As such, when Omnipoint applied to the Board of Appeals there were only five parcels within the Overlay District.

**4.** As originally enacted in 1997, the By–Law pertaining to WCFs permitted the erection of WCFs up to one hundred fifty (150) feet above

finished grade of ground elevation without any special allowance in the case of a significant tree canopy over the site. *See* By–Law, 1997 Amendment, § 12.6.6(b). By vote of the Town Meeting, this height restriction was twice subsequently reduced. The 1998 Amendment to the By–Law reduced the acceptable height of WCF to eighty (80) feet above finished grade of ground elevation and also provided the Planning Board with the authority to issue special permits for heights up to twenty (20) feet higher than the surrounding tree canopy. *See* By–Law, 1998 Amendment, § 12.6.6(b). The 1999 Amendment to the By–Law reduced the permissible height to the present sixty (60) feet above finished grade of ground elevation. *See* By–Law, § 12.6.6(b).

ting the information required for a typical site plan approval under By–Law, § 17, the By–Law also requires supplementary information for an application to erect a WCF, including: a notarized statement attesting to the accuracy of the material submitted with the application; a map of the entire town and the area within two miles of the Town showing the location of existing and proposed WCFs; data detailing existing radio frequency levels; a plan at 1″ = 40′ scale for the proposed WCF; and other information with regard to the proposed facility which the Planning Board may require. *See* By–Law, § 12.6.4. These additional regulatory requirements were apparently added to the By–Law in furtherance of the Planning Board's avowed "stance of 'precaution and procrastination' in order to stay just ahead of the demand for [WCFs]." Lincoln Planning Board Minutes, Zoning Amendments Hearing, March 18, 1998 (Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts, Attachment A.) The By–Law also imposes significant fees upon the filing of an application to erect a WCF. *See* By–Law, § 12.6.7.

### Background

The following facts are undisputed. Beginning in 1997, Omnipoint undertook efforts to locate one or more sites on which to place WCFs which would provide wireless service to north Lincoln, particularly along Route 2. Route 2 is a heavily traversed thoroughfare running east-west through north Lincoln and, as such, is a primary coverage objective for Omnipoint. Because the BIIC site is the only parcel within the Overlay District which would provide coverage to the northwestern section of Lincoln and to the western portion of Route 2, Omnipoint attempted to lease land from the BIIC for the purpose of erecting a WCF. In the Spring of 1998, Omnipoint presented the BIIC with detailed plans for the erection of an eighty (80) foot tall flagpole design WCF. (Complaint, Ex. 3, Attachment B, ¶ 4.)

Despite Omnipoint's numerous efforts to reach an agreement, the Board of Directors of the BIIC voted in August 1999 to decline Omnipoint's proposal to lease BIIC property for the purpose of building a WCF. (*Id.,* ¶ 5.) The BIIC Board of Directors did not cite the financial terms of Omnipoint's proposal as a reason for its rejection. (*Id.*) On the contrary, a representative of the BIIC indicated that the Board of Directors felt that the installation of a WCF was a very politically sensitive issue with the Town and that any rental income received would not be worth the resulting negative feelings from the Town and the immediate neighborhood. (*Id.*)

While attempting to finalize a lease with the BIIC, Omnipoint also investigated the possibility of leasing alternative sites outside of Lincoln from which it could provide coverage to this area. Omnipoint contacted the manager of a Mobil Gas station in Concord located at the intersection of Routes 2 and 2A, as well as the owner of Concord Subaru on Route 2. Neither site was interested in leasing to Omnipoint. (*Id.,* ¶ 6.) Omnipoint also explored the option of leasing the Tennessee Gas site on Route 2, but, despite the owners willingness to lease, Omnipoint determined that the site was unsuitable due to its topography. (*Id.,* ¶ 7.)

Omnipoint also approached the owner of Tracey's Towing. (*Id.,* ¶ 8.) Tracey's Towing is located at the intersection of Bedford Road and Route 2 in Lincoln. Although Tracey's Towing is located within the Town's R–1 residential district, it operates a gasoline service station and towing business as a prior non-conforming use under By–Law, § 4. About two months after Omnipoint received notice of the BIIC's rejection, Omnipoint executed an agreement with the owner of Tracey's Towing on October 20, 1998. In the agreement, the owner of Tracey's Towing agreed to lease part of Tracey's Towing so that Omnipoint could construct and operate a WCF, specifically, an 89–foot tall

telecommunications "monopole" and associated facilities. (Complaint Ex. 3, Att. C.)

Because Tracey's Towing is not located within the Overlay District, Omnipoint filed an application on or about December 29, 1998, with the Board of Appeals requesting that the Board of Appeals exercise its authority under Mass.Gen.L. ch. 40A and By–Law, § 20.2 and grant Omnipoint either a special permit for the alteration of Tracey's Towing's legal pre-existing non-conforming use or, in the alternative, grant a use variance. Omnipoint applied for the special permit under By–Law, § 4.1. The By–Law provides that the Board of Appeals may issue a special permit for the "change or substantial extension of a non-conforming use" if the Board of Appeals determines that such a change or extension "is not substantially more detrimental to the neighborhood than the prior existing non-conforming . . . use." By–Law, §§ 4.1(e), 4.4. Omnipoint alternatively requested a use variance under By–Law §§ 6.1, 6.5.1 and 6.5.2.

On February 2, 1999, the Board of Appeals conducted a hearing regarding Omnipoint's application. At that hearing and in its application, Omnipoint stated and presented evidence that the parcels which constituted the Town's Overlay District did not provide sufficient signal coverage to meet Omnipoint's network needs; that the Town-owned parcels which were part of the Overlay District had not been made available to wireless providers through the necessary bid process; and that the Board of Directors of the BIIC had declined, after numerous attempts and requests, to permit Omnipoint to use the BIIC to locate a WCF. (Complaint, Ex. 2, Tab 5.) Omnipoint stressed that such relief was

necessary because Tracey's Towing was the only available non-residentially zoned location, which would close the coverage gap that exists in the heart of north Lincoln and along Routes 2 and 2A due to the limitations of the Town's Overlay District and the unavailability of the BIIC. The Board of Appeals continued the hearing to February 16, 1999, at which time Omnipoint submitted a written response to the Board of Appeals' request for additional information and submitted the affidavit of Barry Walsh detailing Omnipoint's fruitless attempts to lease the BIIC, as well as to locate other potential sites which would provide coverage to this area.[5] (Complaint, Ex. 3.)

On April 20, 1999, the Board of Appeals issued a four-page decision denying Omnipoint's request for a special permit and/or a use variance to construct a WCF at Tracey's Towing. (Complaint, Ex. 5.) The Board of Appeals decision rested on several legal grounds, but it essentially held that the By–Law restricts WCFs exclusively to the Overlay District and that the Board of Appeals had no authority to grant relief allowing the erection of WCFs outside of the Overlay District.

On May 11, 1999, Omnipoint filed this present lawsuit bringing claims under both federal and state law. By orders of the Court, Count VI which alleged violations of federal civil rights under 42 U.S.C. § 1983 was dismissed on July 27, 1999, and Counts IV and V which asserted state law claims were transferred to state court on May 17, 2000.

In its Motion for Summary Judgment on the remaining three Counts, Omnipoint asserts that the actions of the Town, namely, the adoption by the Town Meeting of the

---

5. Omnipoint also provided responses to the Board of Appeals' requests (1) for Radio Frequency coverage maps based on the assumption that Omnipoint could build towers on each of the parcels within the then existing Overlay District; (2) for a formal, written power of attorney from the owner of the Tracey's Towing site; (3) for an opinion as to whether, as a matter of law, an "effective

prohibition" would exist because one of the properties within the Overlay District was not available for leasing by wireless providers; and (4) for comment upon whether Omnipoint's proposed tower at Tracey's Towing would come within the meaning of an "extension or alteration of a non-conforming use." (Complaint, Ex. 3.)

WCF By–Law and the Board of Appeals' April 20, 1999 decision effectively prohibit the provision of wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) (Counts I and II) and that the Defendant Board of Appeals' decision was not supported by "substantial evidence contained in a written record" in violation of 47 U.S.C. § 332(c)(7)(B)(iii) (Count III).

In its Cross–Motion for Summary Judgment, the Town asserts that the undisputed evidence in the record establishes that the Town's actions do not have the effect of prohibiting the provision of wireless service because Omnipoint may apply to locate a WCF upon any of the six Overlay District parcels and that the Board of Appeals' decision denying Omnipoint's application was supported by substantial evidence in a written record. Alternatively, the Town asserts that there are disputes as to material facts which preclude the granting of Omnipoint's Motion for Summary Judgment.

### DISCUSSION

#### Telecommunications Act of 1996

The TCA was passed "in order to provide a procompetitive, deregulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunication markets to competition . . ." *Paging, Inc. v. Board of Zoning Appeals for the County of Montgomery*, 957 F.Supp. 805, 807 (W.D.Va.1997) (citations and internal quotations omitted). The TCA "is a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." *Amherst*, 173 F.3d at 13. "Accordingly, the TCA significantly limits the ability of state and local authority to apply zoning regulations to wireless telecommunications." *Telecorp Realty, LLC v. Town of Edgartown*, 81 F.Supp.2d 257, 259 (D.Mass.2000).

Under the TCA, the power of local governmental authorities to regulate the placement, construction and modification of WCFs is tempered by the proviso that such regulation shall neither discriminate among providers of personal wireless service nor prohibit, or have the effect of prohibiting, the provision of personal wireless service. *See* 47 U.S.C. § 332(c)(7)(B)(i). Furthermore, the TCA requires that "[a]ny decision . . . to deny a request to place, construct, or modify [WCFs] . . . be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

These "two federal limitations—one dealing with bans and the other with substantial evidence—complement one another by ensuring that local law is both fair and is fairly administered." *Amherst*, 173 F.3d at 16. As such, when a local zoning authority frames its zoning requirements in a manner that make them extremely difficult to fulfill, it makes the locality more vulnerable to a claim that its zoning regime results in an effective ban on wireless service. *See id.* Basically, the TCA gives local authorities the first say in determining where and how to construct WCFs; if, however, a local authority's actions violate the provisions of the TCA, a court has the authority to order the locality to take such steps as are necessary to grant the relief which the wireless provider had originally requested from the locality.

#### Substantial Evidence (Count III)

#### Standard of Review

The applicable standard of review for claims brought pursuant to the TCA varies according to the nature of the claim. *See Amherst*, 173 F.3d at 16, n. 7; *SNET Cellular, Inc. v. Angell, et al.*, 99 F.Supp.2d 190, 194 (D.R.I.2000). In deciding whether a local zoning board's actions are supported by substantial evidence, a "court is acting in a familiar

'review' capacity ordinarily based on the existing record." *Amherst*, 173 F.3d at 16 n. 7 (citing H.R.Conf.Rep. No. 104–458, at 208 (1996) reprinted in 1996 U.S.C.C.A.N. 124, 223). The TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements. *See Amherst*, 173 F.3d at 16. The test is fairly deferential to the opinion of the zoning authority, and a reviewing court is not free to substitute its own judgment for that of the local authority, even if the reviewing court would have decided the issue differently as an original matter. *See id.; Penobscot Air Servs., Ltd. v. FAA*, 164 F.3d 713, 718 (1st Cir.1999); *see also AT & T Wireless PCS v. Winston–Salem Zoning Board*, 172 F.3d 307, 314 (4th Cir.1999); *Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir.1999).

Under this analysis, a court must consider the record as a whole, including contrary evidence. *See Penobscot Air*, 164 F.3d at 718. However, the possibility of drawing two inconsistent conclusions does not mean that the zoning authority's decision is not supported by substantial evidence. *See id.* "While the [local zoning authority] may not ignore evidence presented by the applicant, it is not required to credit that evidence; but, where the applicant's evidence is uncontroverted, there must be a good reason for rejecting it." *SNET Cellular*, 99 F.Supp.2d at 195.

■ The critical inquiry under the substantial evidence test is whether a zoning authority's denial is based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," or whether it is based upon unsub-

stantiated conclusions. *See Oyster Bay*, 166 F.3d at 494 (quoting *Universal Camera v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)); *see also Penobscot Air*, 164 F.3d at 718; *Telecorp Realty*, 81 F.Supp.2d at 260.

### Analysis—Substantial Evidence

■ The Board of Appeals' denial of Omnipoint's application for zoning relief does not violate the substantial evidence requirement of the TCA because the Board of Appeals' decision rested upon a reasonable legal interpretation of the By-Law. The Board of Appeals essentially held that the By–Law does not permit the erection of WCFs on any parcel not within the Overlay District regardless of the facts and circumstances.

The Board of Appeals based its denial of Omnipoint's requested relief on several legal grounds. In denying Omnipoint's application for a special permit, the Board of Appeals interpreted Section 4.1 as permitting the Board of Appeals to issue a special permit for the extension of Tracey's Towing's then existing non-conforming use, i.e., the selling of gasoline, servicing of motor vehicles and the provision of towing services. *See In the Matter of Omnipoint MB Operations, Inc.*, April 20, 1999 (Complaint, Exhibit 5, p. 3.) However, the Board of Appeals interpreted Section 4.1, as well as the parallel state statute, Mass. Gen.L. ch. 40A, § 6, as not "allow[ing] for the development of a *totally new* nonconforming business use ..." *Id.* The Board of Appeals then concluded that a WCF is not an "extension" of a gasoline service station and that, consequently, "such a structure and use is not allowed" at Tracey's Towing or anywhere else in that district.[6] *See id.* As for Omnipoint's re-

---

6. The Board of Appeals also enunciated an alternative ground for denying Omnipoint's application for a special permit. The Board of Appeals found that, even if it were inclined to find that Omnipoint's proposed use was a proper extension of a non-conforming use, the Board "would also find under Section 4.4

that ... such an extension would be 'substantially more detrimental to the neighborhood' than the prior nonconforming use ..." *Id.* As the basis for this conclusion, the Board of Appeals relied on the testimony of a large number of town residents. This testimony may not rise to the level of substantial evi-

quest for a variance, the Board of Appeals ruled that that avenue of relief was also unavailable to Omnipoint because the By–Law does not provide for use variances under any circumstances. *See id.*, at 4.

Giving the Board of Appeals' informed judgment the deference which it is due, *see Penobscot*, 164 F.3d at 718–19, the Court does not find fault with the Board of Appeals' interpretation of its own By–Law, as well as its interpretation of the applicable state law.[7] *See* Mass.Gen.L. ch. 40A, §§ 6, 10; *Rockwood v. Snow Inn Corp.*, 409 Mass. 361, 364, 566 N.E.2d 608 (1991) ("the statute permits extensions and changes to nonconforming structures if (1) the extensions or changes themselves comply with the ordinance or by-law ...").

The Board of Appeals' denial of Omnipoint's application is supported by substantial evidence as required by the TCA. The denial of Omnipoint's request for a variance was based strictly on a legal interpretation of the By–Law which required no reliance on facts to support it. As for the denial of Omnipoint's request for a special permit under Section 4.1, the Board of Appeals needed to rely on only two facts: (1) that Tracey's Towing is not located within the Overlay District; and (2) that a WCF is not an extension of a gasoline service station. The validity of these facts cannot be reasonably controverted. As such, the Board of Appeals' decision satisfies the substantial evidence requirement of the TCA.

## Effective Prohibition Claims (Counts I and II)

### Standard of Review

■ While a court must give a local zoning authority's decision a fair amount of deference when considering a substantial evidence claim, in deciding whether a local government's zoning regulations or zoning decisions prohibit, or have the effect of prohibiting, the provision of personal wireless services, a court resolves the issue *de novo. Town of Amherst*, 173 F.3d at 16 n. 7. Therefore, such claims under the TCA are treated no differently on summary judgment than any other claims litigated in the District Court. *See SNET Cellular*, 99 F.Supp.2d at 195.

■ A District Court shall grant a motion for summary judgment only upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, based on the pleadings, depositions, interrogatories, admissions and affidavits, if any. *See* Fed.R.Civ.P. 56(c); *Newbanks v. Central Gulf Lines, Inc.*, 64 F.Supp.2d 1, 4 (D.Mass.1999). A genuine issue of material fact exists if a reasonable juror could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In deciding cross motions for summary judgment, each cross motion is viewed independently and the facts are viewed in the light most favorable to the non-moving party, drawing all reasonable inferences in that par-

dence under the TCA. However, because the Court finds that the Board of Appeals' primary justification for denying Omnipoint's request for a special permit is supported by substantial evidence, the Court need not reach this issue.

7. The Court does disagree with the Board of Appeals' admonishment of Omnipoint for not having applied to the Planning Board to locate a WCF *inside* the Overlay District. Omnipoint presented the Board of Appeals with evidence that indicated that its requested relief, a WCF at Tracey's Towing, was necessary to fill a significant gap in wireless coverage

which could not be filled by the use of an existing Overlay District parcel. The By–Law does not grant the Planning Board the authority to issue a special permit for the erection of a WCF on a parcel *outside* the Overlay District; the Planning Board's power is limited exclusively to those parcels *inside* the Overlay District. *See* By–Law, § 12.6.5. As such, it would have been futile for Omnipoint to have applied to the Planning Board because the Planning Board does not have the authority to grant the relief which Omnipoint sought— permission to erect a WCF *outside* of the Overlay District.

ty's favor. *See Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991).

In this case, the plaintiff bears the burden of establishing a violation of the TCA. As such, in order for the plaintiff to succeed on its Motion for Summary Judgment as to Counts I and II, it has the burden of showing that the Town's policies or decisions have the effect of prohibiting the provision of personal wireless services. As to the defendants' Cross Motion for Summary Judgment, because the defendants do not bear the ultimate burden of proof at trial, the defendants satisfy their burden at summary judgment by showing that there is an absence of evidence to support the plaintiff's case. *See id.* If however the plaintiff presents evidence which demonstrates that there is an effective prohibition of wireless services, the defendants must proffer enough contrary evidence to establish that there is a genuine factual dispute requiring a trial. *See SNET Cellular*, 99 F.Supp.2d at 195; *Newbanks*, 64 F.Supp.2d at 4.

### Analysis—Effective Prohibition

■ In Counts I and II, Omnipoint alleges that the Town's zoning By–Law, as interpreted by the Board of Appeals' decision, has the effect of prohibiting the provision of personal wireless services in violation of Section 332(c)(7)(B)(i)(II) of the TCA. Omnipoint essentially argues that the enforcement of the Town's zoning criteria for the erection and placement of WCFs—particularly, the restricting of WCFs to only those parcels which constitute the Overlay District—would result in "significant gaps" in wireless coverage within the Town.

Under the TCA, local zoning authorities must ensure that neither their general policies nor their individual decisions prohibit or have the effect of prohibiting the provision of personal wireless services. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II); *Cellular Telephone Co. v. Zoning Board of Adjustment of the Borough of Ho–Ho–Kus*, 197 F.3d 64, 71 (3d Cir.1999) (hereinafter, "*Ho–Ho–Kus*") ("The [TCA] bars local regulation that prohibits or has the effect of prohibiting personal wireless *services*, not the facilities that provide those services."); *Amherst*, 173 F.3d at 14. Local authorities cannot satisfy this mandate by simply allowing for the erection of some WCFs and thus ensuring that wireless services are available merely somewhere within the relevant jurisdiction, even though such services are not comprehensively available throughout the jurisdiction. *See Ho–Ho–Kus*, 197 F.3d at 70. As such, "local zoning policies and decisions have the effect of prohibiting wireless communication services if they result in 'significant gaps' in the availability of wireless services [within the jurisdiction]." *Id.; See also Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 643 (2d Cir.1999). In other words, an effective prohibition can exist even where a town allows for the erection of WCFs but subject to criteria which would result in incomplete wireless services within the town, i.e., significant gaps in coverage within the town.[8]

Omnipoint, therefore, need not prove that the Town has altogether banned WCFs or that wireless services are not

---

8. For instance, a town would violate the TCA if it allowed WCFs to be built on only one parcel within the town if that parcel was situated in such an area that the wireless coverage generated from that parcel was insufficient to provide coverage throughout the town. Similarly, a town would violate the TCA even if it permitted numerous WCFs throughout the town, but subject to such height restrictions that the wireless coverage provided could not bridge the distance between the WCFs. Conversely, a town which instituted a complete ban on WCFs would not necessarily be in violation of the TCA; under the right set of conditions, it may be possible that WCFs which already exist outside of that town would provide an adequate level of wireless coverage within that town. *See Ho–Ho–Kus*, 197 F.3d at 71. In essence, it is not the size or the number of WCFs erected within a town which matters, it is the extent or comprehensiveness of the personal wireless *services* within a town which matters.

available at all within the Town. *See Amherst*, 173 F.3d at 14. Omnipoint must instead establish two elements in order to succeed on an effective prohibition claim. First, Omnipoint must establish that the Town's zoning policies and decisions result in a significant gap in wireless services within the Town. *See Ho–Ho–Kus*, 197 F.3d at 70; *Willoth*, 176 F.3d at 643; *Omnipoint Communications Enterprises, L.P. v. Charlestown Township*, 2000 WL 128703, *3 (E.D.Pa. Jan.21, 2000). Second, Omnipoint must establish "from language or circumstances not just that [its] application [to erect a WCF to eliminate the demonstrated significant coverage gap] has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." *See Amherst*, 173 F.3d at 14. After reviewing the facts in the light most favorable to the Town, the Court concludes that Omnipoint has carried its heavy burden and has established that the Town's zoning policies and decision have the effect of prohibiting the provision of wireless services in violation of the TCA.

Omnipoint has presented evidence demonstrating that at least one of the six Overlay District parcels, namely, the BIIC, is not available for leasing by wireless providers.[9] Omnipoint has presented evidence which establishes that the BIIC is unwilling to lease land to Omnipoint for the purpose of erecting a WCF. The Town, for its part, argues that the BIIC's rejection letter was signed nearly two years ago and that its language does not foreclose the possibility that the BIIC might lease to Omnipoint in the future.[10]

The Town's arguments carry no weight. While it is presently nearly two years from the date on which the BIIC rejected Omnipoint s proposal, Omnipoint's application to the Board of Appeals and its filing of this lawsuit followed within months of both the BIIC's rejection and Omnipoint's reaching an agreement with the owner of Tracey's Towing. More importantly, the Town has not presented, nor alluded to, any evidence which indicates that the BIIC has changed, or would change, its mind with regard to this matter. In addition, the Town has neither argued nor presented any evidence whatsoever which would indicate that Omnipoint did anything less than make every effort to enter into an agreement with the BIIC. In fact, the Town has not rebutted Omnipoint's evidence which indicates that the BIIC rejected Omnipoint's proposal out of the fear of incurring the ire of the Town and not because of the terms of Omnipoint's proposal. The evidence presented establishes that the BIIC is presently unavailable for leasing by Omnipoint.

Omnipoint has further established that the unavailability of the BIIC results in a significant gap in wireless services within the Town.[11] A "gap" in wireless services

---

9. Omnipoint has additionally pointed out that the two Town-owned sites are also not available for leasing because the Town has yet to issue a Request for Proposals which would be a prerequisite to the Town's leasing these properties. *See* Mass.Gen.L. ch. 30B, § 16(c). While the Town's recalcitrance in making these two parcels available for leasing does not bear upon the relief requested in this case, it may be indicative of the Town's hostility towards wireless providers and WCFs.

10. The letter, which is dated August 31, 1998, states in pertinent part, "Unfortunately, we are not interested in pursuing a contract with Omnipoint at this time."

11. Omnipoint has also presented evidence which demonstrates that, even if the BIIC were available, there would still be significant gaps in wireless coverage due to the limitations of the Overlay District and the By–Law criteria for WCFs. In support of its Motion for Summary Judgment, Omnipoint submitted computer projections generated by the program Xcalibur. These computer projections indicated that even if Omnipoint were able to erect WCFs to the dimensions permitted by the Town's By–Law on each of the six Overlay District parcels, including the BIIC, there would still be gaps in its wireless coverage within the Town. The Town disputes the accuracy and sufficiency of this evidence. The Town basically claims that the computer projections are highly speculative and that Omnipoint should have conducted "real world" drive tests to determine the potential coverage of WCFs located at each parcel.

exists "when a remote user of those services is unable to either connect with the land-based national telephone network, or to maintain a connection capable of supporting a reasonably uninterrupted communication." *Ho–Ho–Kus*, 197 F.3d at 70 (citing *Willoth*, 176 F.3d at 641–43). Omnipoint has established that because the BIIC is unavailable there is currently no WCF, within or without the Town, which provides wireless services to customers traveling through the northwest section of the Town. Therefore, a gap in wireless services exists within this section of the Town.

The gap caused by the unavailability of the BIIC is a "significant gap" which constitutes an effective prohibition of wireless services. Whether a "gap" constitutes a "significant gap" depends not only upon its physical size, but also, and perhaps more significantly, upon the number of customers affected by that gap. Since wireless services, unlike more traditional communications industries, are used while in transit, a gap that straddles a heavily traveled commuter thoroughfare would be more significant than a gap that affects a small residential cul-de-sac. *See Ho–Ho–Kus*, 197 F.3d at 70 n. 2. The gap caused by the unavailability of the BIIC is significant both in size and in the number of customers which it affects. The gap encompasses a large area of the northwest section of the Town. Furthermore, the gap affects wireless services on the western portions of Routes 2 and 2A which are both heavily traveled commuter thoroughfares. The Town, itself, conceded at oral argument that there would be a significant gap in wireless services to the Town if the BIIC was unavailable.[12] Omnipoint has established that a significant gap in wireless services exists within the Town.

Omnipoint has also established that under the Town's zoning criteria and administration there is nothing Omnipoint could do which would fill the significant gap in wireless services caused by the limitations of the Overlay District and particularly by the unavailability of the BIIC. The Board

However, Omnipoint's expert, who has ten years of experience in the design and implementation of wireless systems, testified that it is common practice in the telecommunications industry to use such computer projections. Indeed, the Town's own expert testified that he, himself, while working as a consultant for the Town of Sharon, had used such computer projections for the same purpose that Omnipoint has used them in this case. Furthermore, the Lincoln Planning Board, in a prior zoning opinion, cited language from the reports of its own Subcommittee which supports the sufficiency and credibility of these computer projections. The language specifically cited by the Planning Board stated that the Subcommittee found "no reason to disbelieve [the wireless providers'] coverage plots" which indicated that "[n]o carrier was able to create coverage for the whole town [and] none was able to create coverage of the major thoroughfares." *See In the Matter of: Sprint Spectrum, L.P.*, April 24, 1998, p. 6 (Zuekle Affidavit, Ex. D).

While the Court chooses not to base its decision on this particular evidence, it nonetheless notes that, even drawing all reasonable inferences in favor of the Town, this evidence demonstrates that significant gaps in wireless coverage would exist even if Omnipoint could erect WCFs on every Overlay District parcel, including the BIIC.

**12.** Counsel for the Town stated in relevant part, "the town did very carefully pinpoint areas that would serve all quadrants of the town ... if in fact it turns out that one of those pinpoints isn't working ... it is well understood by the responsible officials in the town, understood that that area needs to be substituted for ..." Transcript, Oral Argument, June 23, 2000, p. 42. Counsel further stated that the Town was waiting until it was "crystal clear" that the BIIC was unavailable before it did anything. That time has come and passed. The Town has been aware of the unavailability of the BIIC at least since Omnipoint's application to the Board of Appeals when Omnipoint presented the Board of Appeals with such evidence. Yet, the Town has never added another parcel to the Overlay District to replace the BIIC even though the Town had just such an opportunity on December 29, 1999, when the landowner of two parcels directly adjacent to the BIIC formally moved to amend the By–Law for the purpose of adding his property to the Overlay District. The Town Meeting rejected this amendment by a majority voice vote.

of Appeals' denial of Omnipoint's application to erect a WCF at Tracey's Towing clearly indicates that any further reasonable efforts that Omnipoint might take to eliminate the significant gap would be a waste of time. The Board of Appeals' decision definitively and unequivocally announced that under no set of circumstances would the By–Law permit a WCF to be erected anywhere outside of the Overlay District. Omnipoint has established that in order to provide comprehensive wireless coverage within the Town it is necessary to erect WCF outside the Overlay District. Because the Board of Appeals' decision held that the Board of Appeals has no authority to allow WCFs to be erected outside of the Overlay District, any further application to the Board of Appeals would be futile. Any application to the Planning Board would likewise be futile because it is patently clear that under the By–Law the Planning Board has the power to allow WCFs to be erected on parcels only within the Overlay District and no such power to allow WCFs to be erected on parcels outside the Overlay District. *See* By–Law, § 12.6.5. Thus, Omnipoint has shown that further reasonable efforts to eliminate the significant gap are so likely to be fruitless that it is a waste of time to even try.

Omnipoint has established that the Town's By–Law and its administration have the effect of prohibiting the provision of wireless services within the Town. Omnipoint has shown that the BIIC is unavailable for leasing by Omnipoint; that the unavailability of the BIIC is beyond Omnipoint's control [13]; that the unavailability of the BIIC results in a significant gap in wireless services within the Town; and that this significant gap cannot be eliminated within the confines of the Town's criteria for the placement and erection of WCFs. Furthermore, absent an amendment to the By–Law, Omnipoint's plan is the only feasible plan because Tracey's Towing is the only viable, non-residentially zoned parcel which would fill any substantial portion of the demonstrated gap. *See Amherst*, 173 F.3d at 14. As such, Omnipoint has shown that the Town's By–Law and the Board of Appeals' decision have the effect of prohibiting the provision of wireless services in violation of the TCA, Section 332(c)(7)(B)(i)(II).

### *Remedy*

In the Complaint, Omnipoint requests an injunction and order of mandamus annulling the April 20, 1999 decision of the Board of Appeals and directing the Town, through its agents and/or officers, to take all necessary actions to remove any further impediments to Omnipoint's constructing the proposed WCF at Tracey's Towing. While the TCA does not specify a remedy for its violation, the majority of district courts which have heard such cases

13. This is an important point. If Omnipoint could have closed a deal with the BIIC, but declined to do so because the BIIC insisted upon terms and conditions which, although reasonable, were not advantageous to Omnipoint, then it would have been Omnipoint s policies, and not the Town's, which caused the gap in wireless services.

The Town cannot insulate itself by claiming that it is the BIIC's refusal to lease to Omnipoint which is the cause of the significant gap in wireless services within the Town. By structuring the Overlay District in the manner that it has, the Town has delegated a large degree of authority to the BIIC and to the other four owners of the Overlay District parcels. This delegation essentially amounts to giving individual landowners monopolistic control over the provision of wireless services to each owner's respective section of the Town. When, as is the case here, one of those owners refuses to permit the erection of a WCF on its parcel, the result is a significant gap in wireless services to that section of the Town. While the owner's refusal may be the precipitating cause of the significant gap, it is ultimately the Town's policies, i.e., the selection of that particular parcel as the only parcel that may provide wireless services to that section of the Town, which have the effect of prohibiting wireless services. This is especially so when other landowners are willing to lease to wireless providers parcels which would provide wireless services to that section of the Town, but the Town's zoning laws do not permit WCFs to be erected upon their property.

have held that the appropriate remedy for a violation of the TCA is a mandatory injunction. *See Town of Oyster Bay,* 166 F.3d at 497 (and cases cited therein); *see also Cellco Partnership v. Town of Douglas,* 81 F.Supp.2d 170, 175 (D.Mass.1999) (ordering defendant to issue the necessary variances and permits to allow the construction of the plaintiff's proposed WCF); *Telecorp Realty,* 81 F.Supp.2d at 261 (issuing a preliminary injunction requiring defendants to issue the requested permits). Omnipoint's requested relief, the erection of a WCF at Tracey's Towing, is the appropriate relief because Omnipoint has demonstrated that it is the only feasible plan for substantially, albeit not entirely, filling the significant coverage gap resulting from the Town's zoning criteria. *See Ho–Ho–Kus,* 197 F.3d at 76 (court should consider whether the requested relief will alleviate the demonstrated gap).

### CONCLUSION

For the foregoing reasons, the Court concludes that Omnipoint is entitled to summary judgment as to Counts I and II because Town's By–Law, coupled with the Board of Appeals' denial of Omnipoint's application, has the effect of prohibiting the provision of wireless services within the Town in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

This case dramatizes the perpetual clash between national and local interests and between material progress and natural beauty. In the Nineteenth Century railroad tracks were layed by Walden Pond; in the Twentieth Century telephone poles were the trees that grew on urban streets; in the Twenty–First Century wireless towers will become familiar landmarks across the suburban landscape. A universal technological advance cannot be permanently stayed by a local stratagem devised to preserve the character and beauty of a locality. The enduring principle of local control of land use shall be honored, but only if a federal law which promotes the establishment of a comprehensive nation-wide wireless communication network is not thereby subverted. For good or for ill, Hamilton's, not Jefferson's, vision for America has prevailed.

### ORDER

It is ordered that Plaintiff Omnipoint's Motion for Summary Judgment is granted as to Counts I and II, although denied as to Count III and the defendants' Cross Motion for Summary Judgment is denied as to Counts I and II, although granted as to Count III.

The Court orders that the Board of Appeals' April 20, 1999 decision is null and void. The Court orders that, within thirty (30) days from the issuance of this Order, the Defendant Town of Lincoln, its officers, boards, commissions, departments and instrumentalities, including the Lincoln Board of Appeals and Planning Board, take all steps necessary, including, but not limited to, the issuance of special permits and/or variances, as well as the issuance of building permits, to permit Omnipoint to erect a WCF, as described in Omnipoint's application to the Defendant Board of Appeals, upon the parcel herein referred to as Tracey's Towing which is located within the Town of Lincoln at the intersection of Route 2 and Bedford Road. If the Town fails to take such action within the prescribed time, then the Court shall issue an order granting Omnipoint the authority to erect said WCF at Tracey's Towing.

SO ORDERED.