USCOC of N.H. v. Town of Hopkinton    CV-00-421-JM  04/09/01  P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


USCOC of New Hampshire RSA #2, a
Delaware Corporation doing business as
United States Cellular

   v.                                      Civil No. C-00-421-JM
                                          Opinion No. 2001DNH073P
Town of Hopkinton, New Hampshire


**O R D E R**


Plaintiff USCOC of New Hampshire RSA #2 d/b/a United States Cellular ("U.S. Cellular") seeks an order compelling the Town of Hopkinton, New Hampshire ("Hopkinton" or "Town") to issue U.S. Cellular all permits and approvals necessary for the construction of a wireless telecommunications tower on a 114-acre parcel of land located in the Dimond Hill area of Hopkinton.  After Hopkinton's Planning Board denied U.S. Cellular's application for a waiver and conditional use permit to construct the tower on Dimond Hill, U.S. Cellular filed the present action.  U.S. Cellular asserts that the Planning Board decision violated Section 704 of the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c)(7)(B)(iii), because it was not supported by substantial evidence contained in a written record.  Plaintiff further contends that Hopkinton's zoning ordinance effectively

prohibits U.S. Cellular from providing wireless services to its customers in violation of Section 704 of the TCA, 47 U.S.C. § 332(c)(7)(B)(i)(II). Finally, U.S. Cellular challenges the legality of the Planning Board's decision under New Hampshire law.

Before me is U.S. Cellular's motion for summary judgment on its substantial evidence and state law claims (document no. 12). Also before me is defendant Hopkinton's cross-motion for summary judgment as to all claims (document nos. 13 & 15).

## Background

The following facts are undisputed. U.S. Cellular is a provider of wireless telephone services. The company holds a license from the federal government, which authorizes U.S. Cellular to provide wireless services to certain parts of New Hampshire and requires that the level of service be adequate to meet the reasonable needs of its customers. In order to provide service to a particular region, U.S. Cellular must place antennas throughout the targeted geographic area. The extent of the coverage afforded by each antenna depends upon a variety of factors, including the height of the antenna, the terrain, and the presence of natural or man-made barriers. Presently, U.S.

2

Cellular has no antennas in Hopkinton.

U.S. Cellular's Identified Service Gap

U.S. Cellular determined that it has a significant service gap in and around the Town of Hopkinton. The gap includes portions of western Concord and southeastern Hopkinton, including downtown Hopkinton and sections of Interstate 89, Route 202 and Route 13, which are major commuter thoroughfares. U.S. Cellular further determined that in order to close this gap and provide adequate service to its customers, it would need to install an antenna facility in southeastern Hopkinton.

Hopkinton's Zoning Ordinance

Anyone wishing to install a wireless telecommunications facility within the Town of Hopkinton must obtain prior approval from the Hopkinton Planning Board in accordance with section 3.10 of the Town's zoning ordinance. Section 3.10.4 establishes a Wireless Telecommunications Facilities District, which is defined as "an overlay district consisting of all land above the elevation of 750 feet mean sea level and all Town-owned lands within the Town of Hopkinton. Historic sites are specifically excluded from this District."[1] Pursuant to section 3.10.5,

---

[1] In March 2001, the Town of Hopkinton adopted a new telecommunications ordinance, which significantly altered section

wireless telecommunications facilities such as antennas and towers are permitted within the Wireless Telecommunications Facilities District, but only after the applicant has obtained a conditional use permit from the Planning Board.[2]

There are six hilltops within Hopkinton's borders that

---

3.10. For example, the new ordinance eliminates the Wireless Telecommunications Facilities District and permits wireless service facilities in all zoning districts, as long as the applicant obtains a conditional use permit. The new ordinance also imposes a height limit of 90 feet on personal wireless service facilities. The changes to the ordinance do not affect my analysis of the parties' motions for summary judgment. Accordingly, the factual background contained herein describes the ordinance as it existed prior to March 2001.

[2]In order to obtain a conditional use permit, an applicant must submit information to the Planning Board pursuant to section 3.10.7 of the zoning ordinance. The factors to be considered by the Planning Board in determining whether to grant a conditional use permit include (a) whether the height of the proposed facility exceeds that which is essential for its intended use and public safety, (b) proximity of the facility to residential areas, (c) nature of the uses on adjacent and nearby properties, (d) surrounding topography, (e) surrounding tree coverage and foliage, (f) design of the facility and any characteristics that may reduce or eliminate visual obtrusiveness, (g) proposed ingress and egress to the site, (h) availability of existing towers or structures for possible co-location, (i) visual impact on viewsheds, ridgelines, and other impacts by means of tower location, tree and foliage clearing and placement of incidental structures, (j) whether the proposed facility will unreasonably interfere with the view from a public park, natural scenic vista, historic building or major view corridor, (k) whether the proposed facility will be constructed so as not to result in needless height, mass and guy-wire supports, and (l) the availability of alternative tower structures and siting locations.

contain land above the elevation of 750 feet mean sea level. Accordingly, the zoning ordinance permits the construction of new wireless telecommunications towers on the six hilltops or on Town-owned property, as long as the proposed location does not constitute a historic site and the applicant obtains a conditional use permit. In addition, section 3.10.5 of the zoning ordinance authorizes the Planning Board to grant waivers to permit the construction of wireless communications towers outside the Wireless Telecommunications Facilities District. Even if a waiver is granted, however, the applicant still must obtain a conditional use permit.

Section 3.10.8 of the zoning ordinance sets forth the conditions under which the Planning Board may grant a waiver. The provision provides in relevant part:

> A. _General_. Where the Board finds that extraordinary hardships, practical difficulties, or unnecessary and unreasonable expense would result from strict compliance with the foregoing regulations or the purposes of these regulations may be served to a greater extent by an alternative proposal, it may approve waivers to these regulations. The purpose of granting waivers under provisions of these regulations shall be to insure that an applicant is not unduly burdened as opposed to merely inconvenienced by said regulations. The Board shall not approve any waiver(s) unless a majority of those present and voting shall find that _all_ of the following apply:

5

1.   The granting of the waiver will not be detrimental
     to the public safety, health or welfare or
     injurious to other property and will promote the
     public interest.

2.   A particular and identifiable hardship exists or a
     specific circumstance warrants the granting of a
     waiver.  Factors to be considered in determining
     the existence of a hardship shall include, but not
     be limited to:

     a.   Topography and other site features;

     b.   Availability of alternative site locations;

     c.   Geographic location of property;

     d.   Size/magnitude of project being evaluated and
          availability of co-location.

Pursuant to the plain language of the waiver provision, the

Hopkinton Planning Board retains broad discretion in deciding

whether to approve a waiver in a particular instance.

U.S. Cellular's Application for a Waiver
and Conditional Use Permit

     After conducting a search to identify potential sites in

Hopkinton where an antenna tower could be placed to close its

service gap, U.S. Cellular concluded that none of the six

hilltops located within the Wireless Telecommunications

Facilities District would suffice.[3]  Moreover, U.S. Cellular

_____

     [3]U.S. Cellular retained ATC Realty, LLC ("ATC")to assist it
in evaluating and selecting a location for a proposed antenna

determined that there were no existing structures within the Town where it could install an antenna that would provide adequate coverage. U.S. Cellular did find, however, that it could close its coverage gap by erecting a 150-foot telecommunications tower on a 114-acre parcel in the Dimond Hill section of Hopkinton. Accordingly, U.S. Cellular obtained permission from the property owner to construct a tower at the Dimond Hill site.

Thereafter, on February 28, 2000, U.S. Cellular submitted an application to the Hopkinton Planning Board for the "construction of a 150-foot self-supporting monopole, with appurtant [sic] telephony switching gear in sheds, within an approximately 6,000 square foot fence enclosed compound" on Dimond Hill.[4] Because the Dimond Hill site is not located within the Wireless Telecommunications Facilities District, U.S. Cellular requested both a waiver and a conditional use permit pursuant to section 3.10 of the Hopkinton zoning ordinance.

The Hopkinton Planning Board held extensive public hearings

facility.

[4]ATC, acting on U.S. Cellular's behalf, submitted U.S. Cellular's application to the Hopkinton Planning Board. ATC also represented U.S. Cellular throughout the course of the Planning Board's public hearings on the application. For the sake of simplicity, I have referred to ATC and U.S. Cellular collectively throughout this Order as "U.S. Cellular."

on U.S. Cellular's application, which took place on April 20, May 4, May 11, June 1, and June 20, 2000.[5] During the hearings, U.S. Cellular presented testimony and documentary evidence in support of its position that the proposed Dimond Hill site would fulfill the purposes of Hopkinton's zoning ordinance, could meet the ordinance's requirements for the issuance of a waiver and a conditional use permit, and was the only site that U.S. Cellular had identified that would enable the company to close its coverage gap. The Planning Board also received evidence and heard argument from a group of abutters opposed to U.S. Cellular's application. In addition, the Board heard testimony from residents who were not part of the abutter group, but also opposed the application.

---

[5]U.S. Cellular asserts that certain members of the Planning Board were hostile to U.S. Cellular's proposal from the onset of the application process, but that neither Board member was recused from the proceedings. Having failed to raise this issue at the Planning Board stage, U.S. Cellular cannot seek to benefit from the Board's alleged hostility now. See Bradley v. City of Manchester, 141 N.H. 329, 333 (1996)(challenges to municipal government proceedings are waived if not raised at a time when the error could have been corrected). See generally Winslow v. Town of Holderness Planning Bd., 125 N.H. 262 (1984)(party that objected to planning board member's participation in a proceeding preserved the issue for review by state court). Moreover, while the hearing transcripts do indicate an atmosphere of hostility toward U.S. Cellular, the record shows that the Board gave due consideration to U.S. Cellular's position and weighed U.S. Cellular's evidence during its deliberations.

The Planning Board Decision

On August 3, 2000, following the submission of written briefs by U.S. Cellular and the opposing abutter group, the Planning Board deliberated and voted unanimously to deny U.S. Cellular's request for a waiver. Because it refused to grant the waiver, the Board did not reach U.S. Cellular's application for a conditional use permit.

The Planning Board issued a written Notice of Decision on August 4, 2000, in which it set forth its findings. Specifically, the Board stated:

1. Under Section 3.10.8, A, 1, the Board found, on the basis of the evidence submitted in the record, that the Applicant had not satisfied the requirement that "the granting of the waiver will not be detrimental to the public safety, health or welfare, or injurious to other property and will promote the public interest." Further, the Board found that even though the proposed facilities would not be detrimental to the public safety, granting a waiver to allow construction of the proposed facilities outside of the telecommunications overlay district as defined by the Ordinance, would be injurious to other properties and would not promote the public interest.

2. Under Section 3.10.8, A, 2, the Board determined, on the basis of the evidence submitted in the record, that the Applicant had not demonstrated a "particular and identifiable hardship or a specific circumstance" which warranted the granting of the requested waiver. In this regard,

9

the Board further determined that reasonable opportunities exist in other portions of the community for siting of wireless telecommunication facilities to provide service to alleged gaps in coverage along Interstate 89, Route 202/9, and within western portions of the City of Concord. The Board also found that the Applicant did not demonstrate that siting wireless telecommunication facilities on Dimond Hill at the location requested by the Applicant would be the only alternative to provide service to the alleged gaps in coverage. Further, the Board found that Applicant's evidence demonstrated that siting wireless telecommunications facilities in other parts of the Town within the wireless telecommunications facilities district would provide coverage to a larger geographic area of the Town.

In addition, the Board found that it had not violated the TCA because it had not unreasonably discriminated against U.S. Cellular, did not have a bias against or a history of denying applications from wireless communication service providers, and had not based its decision upon real or perceived environmental or health concerns relating to radio frequency signals. Finally, the Board stated that its written decision constituted a summary of its findings, and referred to the forty-eight page transcript of its August 3, 2000 meeting for an explanation of its full decision.

Following the Planning Board's adverse decision, U.S. Cellular initiated this lawsuit asserting claims under the TCA

10

and state law.  Before me are the parties' motions for summary judgment, both of which have been skillfully argued and cogently presented.

Analysis

A.   The Telecommunications Act of 1996

The provision of the TCA at issue in this case, 47 U.S.C. § 332(c)(7), "is a deliberate compromise between two competing aims – to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." Town of Amherst v. Omnipoint Communications Enter., Inc., 173 F.3d 9, 13 (1st Cir. 1999).  The statute "expressly preserves local zoning authority over the placement, construction and modification of personal wireless service facilities." Cellular Telephone Co. v. Zoning Bd. of Adjustment of Ho-Ho-Kus, 197 F.3d 64, 68 (3d Cir. 1999).  See also 47 U.S.C. § 332(c)(7)(A).  Nevertheless, the TCA places certain limitations upon the exercise of local zoning authority:

> Local zoning authorities may not discriminate among providers of wireless telephone service, see § 332(c)(7)(B)(i)(I), act in a manner that effectively prohibits the provision of wireless telephone services, see § 332(c)(7)(B)(i)(II), or make zoning decisions based on concerns over the environmental or health effects of the radio emissions associated with wireless telephone service, see § 332(c)(7)(B)(iv) . . . In

11

addition, a zoning board's decision to deny permission to build a wireless service facility must be 'in writing and supported by substantial evidence contained in a written record'.

Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Township, 181 F. 3d 403, 407 (3d Cir. 1999)(quoting 42 U.S.C. § 332(c)(7)(B)(iii)). See also Southwestern Bell Mobile Sys., Inc. v. Todd, 2001 WL 293163 *4 (1st Cir. Mar. 30, 2001). "Basically, the TCA gives local authorities the first say in determining where and how to construct [wireless communications facilities]; if, however, a local authority's actions violate the provisions of the TCA, a court has the authority to order the locality to take such steps as are necessary to grant the relief which the wireless provider had originally requested from the locality." Omnipoint Communications MB Operations, LLC v. Town of Lincoln, 107 F. Supp.2d 108, 114 (D. Mass. 2000).

B.  The Substantial Evidence Claim

U.S. Cellular seeks summary judgment on the grounds that Hopkinton's decision denying its application for a waiver and conditional use permit violated the TCA, 47 U.S.C. § 332(c)(7)(B)(iii), because it was not supported by substantial evidence contained in a written record. Hopkinton cross-moves for summary judgment on this issue. "In considering whether

12

substantial evidence supports the agency decision, the court is acting primarily in a familiar 'review' capacity ordinarily based on the existing record." Town of Amherst, 173 F.3d at 16 n.7. Accordingly, it is appropriate to resolve the substantial evidence question based on the Planning Board record before this court. See id. at 16.

1.   Substantial Evidence Standard of Review

"The TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements." Town of Lincoln, 107 F. Supp.2d at 115 (citing Town of Amherst, 173 F.3d at 16). See also Ho-Ho-Kus, 197 F.3d at 72 (the court's task is to determine "whether the decision, as guided by local law, is supported by substantial evidence"). The test is highly deferential to the Planning Board, giving the Board "'the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree that *could* satisfy a reasonable factfinder'." Penobscot Air Services Ltd. v. Federal Aviation Admin., 164 F.3d 713, 718 (1st Cir. 1999)(quoting Allentown Mack Sales & Serv., Inc. v. N.L.R.B., 118

13

S.Ct. 818, 828 (1998)).  Accordingly, the court is not free to substitute its own judgment for that of the local zoning authority, but must determine whether the local authority's decision is based on "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'."  Id. (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951)).  See also Todd, 2001 WL 293163 *5 (substantial evidence review is highly deferential to the local zoning authority, but is not a rubber stamp).

In evaluating the Hopkinton Planning Board's decision under the substantial evidence standard, this court must consider the evidence on the record as a whole, taking into account any evidence that is unfavorable or contradictory to the Board's decision.  See Todd, 2001 WL 293163 *5; Penobscot Air, 164 F.3d at 718; Pine Grove, 181 F.3d at 408.  The court will uphold the Planning Board's decision as long as it is reasonably based upon the evidence before it and not merely upon unsubstantiated conclusions.  See Town of Lincoln, 107 F. Supp. at 115.

 2. Application of the Substantial Evidence Standard
    to the Hopkinton Planning Board's Decision

Under the waiver provision of Hopkinton's zoning ordinance, the Planning Board *may* grant a waiver if a majority of

14

the Board members find *both* (1) the granting of the waiver will not be detrimental to the public safety, health or welfare or injurious to other property and will promote the public interest, *and* (2) a particular and identifiable hardship exists or a specific circumstance warrants the granting of a waiver, taking into account the topography of the proposed site, the availability of alternative sites, the location of the proposed site, and the size of the project under consideration.  The Hopkinton Planning Board unanimously concluded that U.S. Cellular's application did not satisfy either prong of this analysis, and denied the application on that basis.  Thus, the Board's decision withstands scrutiny under the TCA if there was substantial evidence in the record to support *either* the Board's conclusion that the granting of a waiver to construct a tower outside the overlay district would be injurious to other properties and would not promote the public interest *or* the Board's conclusion that U.S. Cellular had not demonstrated a particular and identifiable hardship or specific circumstance that would justify a waiver.

The Hopkinton Planning Board's denial of U.S. Cellular's application for a waiver was supported by substantial evidence in

15

the record.  Specifically, I find that the record contains

substantial evidence supporting Hopkinton's findings that

granting a waiver would not promote the public interest and that

U.S. Cellular failed to identify a particular and identifiable

hardship or specific circumstance justifying the granting of a

waiver.[6]

U.S. Cellular is correct that the Planning Board's August 4,

2000 Notice of Decision did not articulate a specific basis for

---

[6]The Planning Board's conclusion that a telecommunications
tower on Dimond Hill would be injurious to neighboring property
is not supported by substantial evidence.  U.S. Cellular
presented evidence in the form of a market analysis showing that
cellular telephone towers have had no adverse impact on property
values in New Hampshire.  U.S. Cellular also introduced the
testimony of a licensed real estate appraiser who stated that he
could find no data connecting cellular telephone towers to the
devaluation of real estate, and opined that U.S. Cellular's
proposed tower on Dimond Hill would have no impact on the value
of homes in that area.  In contrast, several Town residents
expressed concern about the potential impact of the proposed
tower on property values.  In addition, the Board heard testimony
from Mary Skobie Cowen, a local real estate broker, who presented
anecdotal evidence of properties that had been adversely affected
by their proximity to power lines and main roads, but could say
nothing regarding the impact of cellular telephone towers on
property values.  Ms. Cowen's testimony was both unsupported and
irrelevant.  Moreover, the Hopkinton residents' generalized and
speculative concerns about a potential decrease in property
values were inadequate to support the Board's conclusion,
especially in light of U.S. Cellular's contradictory evidence.
See e.g., Pine Grove, 181 F.3d at 409; Town of Oyster Bay, 166
F.3d at 496.

16

the Board's finding that the granting of a waiver would not promote the public interest. Nevertheless, the written decision is sufficiently clear to guide the court to those portions of the record that support the Board's conclusion and to enable the court to review the factual basis for the Board's decision. See Todd, 2001 WL 293163 *7 (a local zoning board's written decision satisfies the TCA's requirement that permit denials be "in writing" where the stated reasons for the denial are sufficiently clear to permit an assessment of the evidence in the record supporting those reasons). The Notice of Decision states, "granting a waiver to allow construction of the proposed facilities outside of the telecommunications overlay district . . . would not promote the public interest." The Notice of Decision further refers to the transcript of the Board's August 3, 2000 meeting for a description of the Board's full decision. The transcript shows that in evaluating whether the granting of a waiver to U.S. Cellular would promote the public interest, the Board members' overwhelming concern was that U.S. Cellular's proposed site would provide limited coverage within Hopkinton's borders. In contrast, certain Board members emphasized, propagation studies illustrating the extent of

17

coverage that U.S. Cellular could achieve using sites within the Wireless Telecommunications Facilities District demonstrated that alternative sites within the overlay district would provide substantially more coverage to Hopkinton while closing most of U.S. Cellular's defined coverage gap.

The record supports Hopkinton's conclusion that the Dimond Hill site would not promote the public interest. U.S. Cellular's propagation maps show that the proposed Dimond Hill site would provide more coverage to the neighboring City of Concord than to Hopkinton.[7] The propagation maps further demonstrate that the construction of a tower on Irish Hill, a site within the Wireless Telecommunications Facilities District, would provide coverage to much of Hopkinton and would close or almost entirely close the portion of U.S. Cellular's coverage gap that currently exists within Hopkinton's borders.[8] In addition, the propagation maps

[7]Colored versions of U.S. Cellular's propagation maps are marked as Exhibit 18 to its Motion for Summary Judgment.

[8]During the public hearing that was held on June 20, 2000, U.S. Cellular admitted that the proposed Dimond Hill site would provide more coverage to Concord than to Hopkinton. It further conceded that U.S. Cellular hoped to serve Hopkinton in the future using a tower that it was proposing to build in a neighboring community. See Hearing Transcript dated June 20, 2000 at 41-42. Hopkinton Planning Board members referred to this testimony in expressing their concerns that U.S. Cellular's proposal would not promote the public interest.

18

illustrate that the construction of a facility on Gould Hill, which is located within the Wireless Telecommunications Facilities District, would provide far greater service within Hopkinton than the proposed Dimond Hill site. This evidence contradicts U.S. Cellular's assertion that the Dimond Hill site would promote the public interest by providing better service coverage to the area than any other alternative.[9] Accordingly, I find that the Board's decision was reasonable and supported by substantial evidence in the record.

In addition, I reject U.S. Cellular's contention that there was no substantial evidence in the record to support the Planning Board's decision that U.S. Cellular failed to demonstrate a "particular and identifiable hardship or a specific circumstance" that justified the issuance of a waiver. As stated in the Notice of Decision, the Board found that there were reasonable opportunities elsewhere in the community to construct a tower that would provide service to the areas targeted by U.S. Cellular, including Interstate 89 and Route 202. This conclusion

---

[9]U.S. Cellular's propagation maps showed that Putney Hill, a site located within the overlay district, would provide substantially more service within Hopkinton than the Dimond Hill site. U.S. Cellular provided uncontroverted testimony, however, that Putney Hill likely would not be a feasible alternative because it contains too many historic markers and properties.

finds substantial support in the record. Significantly, U.S. Cellular's own propagation maps indicate that the presence of a tower on Irish Hill would close the service gap identified by U.S. Cellular within the Town of Hopkinton. Indeed, at a hearing before the Board, U.S. Cellular agreed that Irish Hill would provide "pretty good coverage" and that it would be possible to lease a site at that location. See Hearing Transcript dated June 20, 2000 at 20, 46.

Although the evidence does demonstrate that neither Irish Hill nor any other site within the Wireless Telecommunications Facilities District would enable U.S. Cellular to close the portion of its service gap that lies beyond Hopkinton's borders, nothing in the Hopkinton zoning ordinance or in the TCA requires the local zoning authority to permit the construction of a facility within its community in order to service neighboring jurisdictions. See e.g., Ho-Ho-Kus, 197 F.3d at 70 (local zoning decisions have the effect of prohibiting wireless communication services if they result in significant gaps in service within the jurisdiction); Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 643-44 (2d Cir. 1999)(same); Town of Lincoln, 107 F. Supp.2d at 117 (an effective prohibition can occur when a town's zoning

20

policies result in incomplete wireless services "within the town").[10]  As one of Hopkinton's Planning Board members remarked during deliberations on U.S. Cellular's application, the specific circumstance identified by U.S. Cellular during the public hearings was the company's need to provide coverage to a substantial section of western Concord, including portions of Routes 202 and 89, as well as parts of Route 13 extending into the neighboring Town of Bow.  See Hearing Transcript dated August 3, 2000 at 28-9.  The Board's refusal to accept this evidence as demonstrating a "specific circumstance" warranting a waiver under Hopkinton's zoning ordinance was reasonably based on substantial evidence in the record.[11]

---

[10]U.S. Cellular challenges the defendant's contention that U.S. Cellular should have considered sites in Concord, arguing that the TCA should begin and end within the Town's borders. U.S. Cellular's position is inconsistent with the relief it is seeking in this case, namely, an injunction that would allow it to construct a tower in Hopkinton in order to close a service gap that exists primarily within the City of Concord, beyond Hopkinton's borders.

[11]I reject Hopkinton's argument that the Board's decision was justified on the grounds that the Dimond Hill site was "vertically challenged" and would discourage co-location by other service providers.  First, nothing in the Board's decision suggests that this was a basis for its conclusion that U.S. Cellular had failed to demonstrate a particular hardship or specific circumstance.  Second, nothing in the record other than speculative argument from the attorney for the opposing abutters supports this contention, which was contradicted by U.S.

21

C.    The Effective Prohibition Claim

Hopkinton has moved for summary judgment with respect to U.S. Cellular's claim that the Town has violated the TCA by effectively prohibiting U.S. Cellular from providing wireless services to its customers. Hopkinton's motion, as U.S. Cellular argues, is premature.

Unlike the substantial evidence claim, which is decided by the court on the basis of the record before it, the court reviews an effective prohibition claim de novo. See Town of Amherst, 173 F.3d at 16 n.7. Accordingly, the parties agreed that this court would resolve U.S. Cellular's substantial evidence claim on summary judgment, but that U.S. Cellular would have an opportunity to present new evidence regarding its effective prohibition claim at a one-day trial that is scheduled for May 2001. This agreement is reflected in the Report of Parties' Planning Meeting pursuant to Fed. R. Civ. P. 26(f) and Local Rule 26.1, which was approved as an order of the court on November 3, 2000. It is clear from the Order that the parties did not intend to have the court resolve the effective prohibition claim until after U.S. Cellular has been afforded the opportunity to present

Cellular's presentation of substantial evidence regarding the Dimond Hill site's attractiveness for co-location.

22

new evidence.  Hopkinton's motion, therefore, is denied.

D.    The State Law Claim

Finally, U.S. Cellular moves for summary judgment on the grounds that the Hopkinton Planning Board's decision to deny its application for a waiver was arbitrary and capricious and thus violated New Hampshire law.  Defendant Hopkinton cross-moves for summary judgment on U.S. Cellular's state law claim.

Under New Hampshire law, a reviewing court may reverse the decision of a local planning board to deny an application "when there is an error of law or when the court is persuaded by the balance of probabilities, on the evidence before it, that said decision is unreasonable."  N.H. Rev. Stat. Ann. 677:15,V.  See also Condos East Corp. v. Town of Conway, 132 N.H. 431, 434 (1989); Durant v. Town of Dunbarton, 121 N.H. 352, 357 (1981).  U.S. Cellular asserts that the Planning Board record is wholly insufficient to support the Town's ruling on its application.  As described above, however, the Board's decision was reasonably based on the evidence before it.  Accordingly, Hopkinton is entitled to summary judgment with respect to this claim.

## Conclusion

For the reasons set forth above, U.S. Cellular's motion for

summary judgment (document no. 12) is denied, both with respect to the substantial evidence claim and the state law claim. Hopkinton's cross-motion for summary judgment (document nos. 13 & 15) is granted with respect to the substantial evidence claim and the state law claim, but denied with respect to the effective prohibition claim.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: April 9, 2001

cc:    Steven E. Grill, Esq.
       Russell F. Hilliard, Esq.