NEXTEL COMMUNICATIONS OF THE MID–ATLANTIC, INC. d/b/a Nextel Communications, Plaintiff,

v.

The TOWN OF BROOKLINE, MASSACHUSETTS, et al., Defendants.

Civil Action No. 06–11251–NG.

United States District Court, D. Massachusetts.

Sept. 28, 2007.

---

7. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).

Danielle L. Pacik, Steven E. Grill, Devine, Millimet & Branch, Manchester, NH, for Plaintiff.

John J. Buchheit, Office of Town Counsel, Joslin Ham Murphy, Town of Brookline, Brookline, MA, for Defendants.

## ORDER

NANCY GERTNER, District Judge.

The Court hereby ADOPTS the Report and Recommendations of Magistrate Judge Dein (document # 28), DENIES Plaintiff's Motion for Summary Judgment (document # 15), and GRANTS Defendant's Motion for Summary Judgment (document # 19). For the reasons stated in the Report and Recommendations, the Zoning Board of Appeals's decision was based on substantial evidence, properly defined by the Magistrate Judge as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *National Tower v. Plainville Zoning Bd.*, 297 F.3d 14, 22 (1st Cir.2002) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95

L.Ed. 456 (1951); internal quotations and citations omitted). Even if this Court might decide the issue differently, it cannot substitute its judgment for that of the municipality, and there was adequate evidence in the record to support the Zoning Board of Appeals's decision. Many of the objections raised by Nextel, such as its argument that the Distributed Antenna System is too early in its construction to be effective and is inadequate to the task Nextel will require of it, may be properly addressed to this Court in briefing on Count II: whether the denial constitutes an "effective prohibition" of wireless services under the Telecommunications Act.

### REPORT AND RECOMMENDATION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JUDITH GAIL DEIN, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Nextel Communications of the Mid–Atlantic, Inc. d/b/a Nextel Communications ("Nextel") is a provider of personal wireless services. It has brought this action against the Town of Brookline, Massachusetts ("Town" or "Brookline"), its Zoning Board of Appeals ("ZBA" or "Board") and the individual members of the ZBA, claiming that the defendants' denial of its application for a special permit and/or use variance to construct a faux chimney containing wireless antennas on the roof of a private hospital in Brookline violated certain provisions of the Telecommunications Act of 1996 ("TCA"). Nextel's complaint contains two causes of action. In its First Cause of Action, Nextel alleges that the defendants' decision to deny its application

was not supported by substantial evidence contained in a written record as required by the TCA, 47 U.S.C. § 332(c)(7)(B)(iii), and in its Second Cause of Action, Nextel alleges that the defendants' actions have had the effect of prohibiting Nextel from providing personal wireless services in violation of the TCA, 47 U.S.C. § 332(c)(7)(B)(i)(II). On each of its claims, Nextel is seeking an injunction directing the Town to grant it all permits and approvals necessary for the construction of its proposed facility.

The matter is presently before this court on the parties' cross-motions for summary judgment on Nextel's First Cause of Action (Docket Nos. 15 and 19), the parties having agreed to defer discovery and a decision on the remaining count. Therefore, the issue raised by the parties' motions is whether the ZBA's June 27, 2006 written decision ("Decision") denying Nextel permission to install wireless communications antennas and associated equipment on the roof of a Brookline hospital was supported by substantial evidence contained in a written record. As detailed herein, this court concludes that there is substantial evidence in the record to support the ZBA's Decision. Accordingly, this court recommends to the District Judge to whom this case is assigned that the "Plaintiff's Motion for Summary Judgment" (Docket No. 15) be DENIED and that the "Defendants' Cross Motion for Summary Judgment on Count I" (Docket No. 19) be ALLOWED.

### II. STATEMENT OF FACTS [1]

The following facts are undisputed unless otherwise indicated.

---

1. The facts are derived from the Defendants' Concise Statement of Undisputed Material Facts and Defendants' Response to Plaintiff's Rule 56.1 Statement of Undisputed Material Facts (Docket No. 21) ("DF") and the Exhibits attached to the Declaration of David Stoll, which is attached to the Plaintiff's Motion for Summary Judgment (Docket No. 15) ("Pl.'s

## Nature of Nextel's Business

Plaintiff Nextel is licensed by the Federal Communications Commission to provide personal wireless services in various markets throughout the country, including in Massachusetts. (PF ¶ 1; Pl.'s Ex. A, Tab 3 at 2). Nextel's goal is to provide high quality, reliable wireless communications coverage on roads and in buildings such as homes and businesses. (PF ¶ 1; Pl.'s Ex. B at 25). In order to do this, Nextel's wireless network must have adequate coverage and adequate capacity. (PF ¶ 1). The facilities that Nextel uses to provide this coverage fall within the definition of "personal wireless services facilities" that is set forth in Section 704 of the TCA, 47 U.S.C. § 332(c)(7)(C). (PF ¶ 5).

Nextel provides services by constructing a network of communication sites that use Enhanced Specialized Mobile Radio technology. (Affidavit of David Stoll ("Stoll Aff.") ¶ 4).[2] The network requires the deployment of antennas throughout the area to be covered. (*See id.* ¶ 5; PF ¶ 2). The antennas are connected to receivers and transmitters that operate in a limited geographic area known as a "cell." (*Id.*). These cell sites serve portable wireless communication handsets and mobile telephones. (Stoll Aff. ¶ 5). The size of the area served by each cell site depends upon a number of factors, including but not limited to, the height of the antennas, topography of the land, vegetative cover and physical obstructions. (*Id.* ¶ 7; PF ¶ 3).

In order for Nextel's network to function properly, there must be sufficient over-lapping coverage between adjoining cells to allow for the transfer or "hand-off" of calls from one cell to another and to avoid disconnection or "dropped" calls. (PF ¶ 4; *see also* Stoll Aff. ¶ 6). Therefore, Nextel's antennas must be strategically located within the targeted area to enable the signal to transfer from one cell site to another seamlessly and without involuntary termination. (Stoll Aff. ¶ 6). In addition, because Nextel's transmitting and receiving facilities operate on a line-of-sight basis, requiring a clear path from the facility to the user on the ground, its antennas must be located high enough to allow transmission of radio frequency signals above trees, buildings and other structures that may obstruct or degrade signals. (Pl.'s Ex. A, Tab 3 at 2; PF ¶ 4).

## Nextel's Application for a Special Permit and/or Use Variance

Nextel currently maintains three cell sites in Brookline, but it has identified a substantial gap in its wireless communication coverage in the southern section of the Town. (Stoll Aff. ¶¶ 8, 9, 11). After searching for suitable sites at which to install a new facility, Nextel identified the Bournewood Hospital, a private hospital located at 300 South Street in Brookline (the "Property"), as its desired location and entered into a lease agreement with the owner of the Property. (Pl.'s Ex. B at 17–18; Pl.'s Ex. A, Tab 1; Ex. C attached to Pl.'s Ex. C at 1). The Property lies in the southeast corner of Brookline, adjacent to the Boston City line. (Ex. C attached to Pl.'s Ex. C at 1). The surrounding

---

Ex. ——"). In a separate Memorandum of Decision and Order on Defendants' Motion to Strike issued on this date, this court has stricken those portions of Mr. Stoll's Declaration, and the related portions of the Plaintiff's Rule 56.1 Statement of Undisputed Material Fact (Docket No. 17) ("PF"), to the extent that they contain facts that are not included in the administrative record or are otherwise inconsistent with the administrative record.

2. The Affidavit of David Stoll was submitted to the Town as part of Nextel's application for a special use permit and/or variance, and is part of the administrative record. It can be found at Pl.'s Ex. A, Tab 5.

neighborhood includes Allandale Farm, Walnut Hills Cemetery, Baker School and single family homes. (*Id.*).

On or about December 27, 2005, Nextel filed an Application for Plan Examination and Building Permit with the Town, as well as an Application for Special Permit and/or Use Variance. (*See generally* Pl.'s Ex. A). By its applications, Nextel sought permission to install a wireless antenna facility on the rooftop of the Property. (*Id.* at Tab 1). Specifically, it proposed to install six panel antennas inside a fiberglass structure disguised as a chimney and extending ten feet above the existing building. (Ex. C attached to Pl.'s Ex. C at 1).

The Property is located in an S–7 residential zoning district, and is a nonconforming use because hospitals are prohibited in such districts by Brookline's Zoning By–Law ("By–Law"). (DF ¶ 1; Pl.'s Ex. A, Tab 3 at 1). Accordingly, Nextel sought a special permit under the By–Law. (Pl.'s Ex. A, Tab 3 at 1). It claimed that the ZBA was authorized to grant it such relief because its proposed facility would constitute an extension or alteration of a nonconforming use and would meet all of the conditions necessary for approval of a special permit. (*See id.* at 3–5). However, Nextel also recognized that Brookline's Zoning By–Law expressly prohibits the installation of a wireless communications facility on or within 50 feet from a hospital. (*Id.* at 1). Therefore, as an alternative to its request for a special permit, Nextel sought a use variance pursuant to Section 9.09 of the By–Law. (Pl.'s Ex. A, Tab 3 at 1).

### The Planning Board Decision

On April 27, 2006, the Brookline Planning Board held a meeting to consider Nextel's application. (DF ¶ 2). That same day, the Planning Board issued a report to the ZBA in which it unanimously recommended that Nextel's proposal be denied. (Ex. C to Pl.'s Ex. C at 3). The ZBA's written Decision denying Nextel's application for a special permit and/or use variance, which is at issue in the instant case, specifically incorporates by reference the Planning Board's report. (Pl.'s Ex. C at 3).

In its report, the Planning Board determined that Nextel's proposal required a use variance under Section 9.09 of the Town's By–Law. (Ex. C to Pl.'s Ex. C at 2). It also expressed significant concern that Nextel was seeking to locate its facility on a hospital, which is expressly forbidden by the Zoning By–Law, noted that Nextel had not stated how any of the criteria necessary for a use variance were met, and expressed concern that the granting of a use variance would set a precedent for future applications. (*Id.* at 3). The Planning Board also determined that Nextel had not thoroughly investigated alternatives to the Property, including "the recently proposed Clearlinx Distributed Antenna System (DAS) for South Brookline." (*Id.*). It further stated, "[t]he Planning Board believes that the Town has worked very hard to find aesthetic alternatives to facilitate wireless facilities in South Brookline and has urged the applicant to find out more about the proposed DAS system." (*Id.*).

### The DAS System

The evidence shows that, prior to Nextel's application, the Town had engaged in a lengthy and organized effort to find a comprehensive solution to the coverage gap in south Brookline that would both meet the needs of all carriers and satisfy members of the community. (Pl.'s Ex. B at 41–42, 47, 51; Ex. D to Pl.'s Ex. C at 1). Specifically, in 2004, the Town voted to authorize a committee to recommend options for the siting of wireless communications equipment in south Brookline in or-

der to solve the coverage gaps in that area. (Ex. D to Pl.'s Ex. C at 1). The committee then engaged an expert to assist it in developing technically feasible solutions that the committee could recommend to the Town. (*Id.*). This process resulted in the selection of DAS as the feasible option. (DF ¶ 9). The DAS system is a line-of-sight technology that will involve the installation of antennas at "nodes" located on major arteries, as well as in neighborhoods. (Pl.'s Ex. B at 55, 58). As of the hearing date, the plan for a DAS system in Brookline included 33 nodes, which could be increased to meet increasing demand, and the placement of antennas at heights of about 24 feet. (*Id.* at 43, 55). According to the evidence, the system is "smart" and is able to reconfigure itself to meet coverage requirements. (*Id.* at 59). At the time of the hearing before the Planning Board, Nextel had not analyzed the DAS system and had not met with Clear-Linx, the builder of the system. (*See* DF ¶¶ 2, 6).

### The ZBA Hearing

The ZBA held a single public hearing on Nextel's application on May 4, 2006. (Pl.'s Ex. B). At the hearing, Nextel's counsel, Ricardo Sousa, discussed the design of Nextel's proposed facility and Nextel's effort to comply with the goals of the Zoning By–Law pertaining to wireless communications facilities. (*See id.* at 6–7). In particular, Attorney Sousa emphasized that Nextel's proposal would achieve the goals of encouraging antennas on existing structures, encouraging mitigation of visual aspects and minimizing the visibility of antennas. (*Id.*). However, he agreed that the By–Law prohibited wireless installations on private hospitals and that the Property is a private hospital. (*Id.* at 8–9). Nevertheless, he expressed Nextel's position that the ZBA had authority to grant it relief, either in the form of a

special permit for the alteration of a preexisting nonconforming use or in the form of a use variance. (*Id.* at 9).

During the hearing, Nextel also introduced testimony from its radio frequency engineer, David Stoll. (*Id.* at 10). Using radio frequency plots, Mr. Stoll described the coverage gap that Nextel had identified in the southern section of Brookline, as well as the coverage that would be provided by its proposed facility at the Property. (*Id.* at 11–15). He also discussed Nextel's consideration of alternative sites and the reasons that Nextel had rejected them. (*Id.* at 17–21, 27).

Mr. Stoll was asked whether Nextel had considered the Town's proposed DAS system. (*Id.* at 21). In conclusory terms, Mr. Stoll testified that the DAS system would not provide the same coverage objective as Nextel's proposed facility. (*Id.*). He stated that a DAS system provides reliable coverage if properly designed along roads or arteries, but that it would not provide coverage for some homes which were located off of major roads. (*Id.* at 22, 55–56). He said that he had spoken to ClearLinx, the builder of the DAS system, the day before, and that ClearLinx had confirmed that reliable coverage off the roads could not be guaranteed. (*Id.* at 57). Mr. Stoll provided no underlying facts or analysis to support his conclusions.

Despite Mr. Stoll's express conclusion that the DAS system would not meet Nextel's needs, Attorney Sousa stated that Nextel had been "unable to find out certain information that would give us a clearer picture as to whether or not we could utilize or not utilize DASs proposed system." (*Id.* at 23). More specifically, Attorney Sousa stated that the height of the antennas, the number of nodes and the location of the nodes remained unclear. (*Id.* at 23–24). Thus, although ClearLinx

had provided Nextel with a map of its initial design at the meeting the previous day, the design remained subject to change and the height of the antennas still had not been finally established. (*Id.* at 24). Consequently, according to Attorney Sousa, Nextel was not able to provide radio frequency plots, and given the missing information, "it's almost impossible for us to prepare plots that would be accurate." (*Id.*).[3] There was no testimony as to whether, if the DAS system's configuration was still being finalized, Nextel's needs could be met by modifying the proposed design.

Notwithstanding Nextel's inability to obtain the necessary information on the DAS system, Attorney Sousa stated that the company did not believe the system would fulfill its objective in south Brookline, which was to provide indoor coverage. (*Id.* at 24–25). Although he agreed that the DAS system could assist Nextel in meeting its capacity needs, he stated that Nextel did not feel that DAS was a viable solution for filling its gap in coverage. (*Id.* at 26).

The ZBA also heard testimony from Janice Kahn regarding the DAS proposal. Ms. Kahn is a member of the Town's Wireless Advisory Committee and was one of the architects of Brookline's by-law regulating the siting of telecommunications facilities in the Town. (DF ¶ 8; Pl.'s Ex. B at 41). She also has been involved in every Town effort to address wireless communications coverage needs in south Brookline. (*Id.*). Ms. Kahn asserted that Nextel's proposal constituted an incremental approach to solving the coverage issues in south Brookline. (Pl.'s Ex. B at 42). She explained that there are significant coverage issues in that area, not just for Nextel, but for all carriers, and that the Town "has really sought to involve the community in a very lengthy public process to try and figure out a holistic, a more integrated, approach to solving the coverage needs for all carrie[r]s, in a way that was both community/neighborhood sensitive, and also would meet the needs of the carriers." (*Id.* at 42). As noted above, this process resulted in the DAS proposal. (*See id.* at 42–43).

At the hearing, Ms Kahn disagreed with Nextel, and stated that the DAS system will meet the needs of people in their homes, that the nodes for the DAS system will be placed along both major roads and neighborhood streets, and that the number of nodes could be increased as the need for wireless services increases. (DF ¶ 8). She also testified that the large number of nodes would make the DAS system reliable and that the system is "smart" in that it reconfigures itself to meet coverage needs. (*Id.*; Pl.'s Ex. B at 59). Furthermore, according to Ms. Kahn, the system would allow the Town to provide access to all carriers. (DF ¶ 8).

Three residents of Brookline also spoke in opposition to Nextel's application. (Pl.'s Ex. B at 47–51). Two of them expressed their support for the DAS system because it had resulted from the Town's effort to find a comprehensive solution to the coverage problem in south Brookline and was

---

3. Maps depicting existing and proposed coverage with ClearLinx are included as part of Nextel's application for a special permit and/or use variance. (Pl.'s Ex. A, Tab 5). However, nothing in the record indicates whether these maps accurately describe the coverage that will be available to Nextel when the DAS system is completed. Furthermore, neither the maps themselves nor the other evidence contained in the record clearly explains how to read the information set forth in the maps. Therefore, this court is unable to draw any conclusions from them regarding the ability of the DAS system to fill Nextel's coverage gap.

satisfactory to the residents there. (*See id.* at 47, 51).

Additionally, the ZBA heard testimony from Frank Hitchcock of the Brookline Building Department, who agreed with the recommendation of the Planning Board to deny Nextel's application. (*Id.* at 62). Mr. Hitchcock stated that Nextel's application did not qualify for a special permit because the telecommunications antennas that Nextel proposed to install at the Property were unrelated to the Property's preexisting nonconforming use as a hospital, and, therefore, could not be considered an extension of a nonconforming use. (*Id.* at 62–63). He further recommended that the ZBA deny Nextel's application for a use variance because no facts had been presented to indicate that Nextel met the requirements of such a variance as set by the By–Law. (*See id.* at 64–65).

After hearing all of the testimony, the members of the ZBA deliberated and by a vote of 2–1, denied Nextel's petition. (*Id.* at 73).

### The ZBA's Written Decision

On June 27, 2006, the ZBA issued its written Decision denying Nextel's application for a special permit and/or use variance to install wireless telecommunications equipment on the Property. (Pl.'s Ex. C). Therein, the ZBA described the testimony and evidence presented at the May 4, 2006 hearing, as well as the Board members' deliberations and the grounds upon which they had voted to deny the application. (*Id.* at 2–4). In addition to finding that Nextel's proposed cell site would not eliminate the coverage gap in south Brookline for Nextel or other licensed cell carriers (Findings Nos. 6–7), the ZBA made the following specific findings of fact:

8. By a vote of a May 2005 Brookline Town Meeting, of which this Board takes judicial notice, under Article 10 in the Warrant for that Meeting, a copy of which is attached as *Exhibit D,* together with the official record for that Article, the Town accepted the proposal of the Moderator's Committee on Wireless Services in South Brookline to install a Distributed Antenna System ("DAS") in South Brookline;

9. The Town's DAS proposal is expected to resolve the existing coverage gaps in South Brookline and is a feasible alternative to the proposed cell site;

10. The Town's DAS proposal has not been fully investigated by the Petitioner;

11. Under Section 4.09(6) of the Town's Zoning By-law, the Property is a prohibited location for the proposed cell site; and

12. If allowed, the proposed cell site would adversely affect the neighborhood.

(*Id.* at 4–5).

The ZBA also provided a description of the applicable law, including its authority under state law and the Town's By–Law, to grant a special permit or a use variance. (*Id.* at 5–7). It then rendered the following conclusions:

The Applicant seeks a special permit on the ground that the proposed installation constitutes an alteration of a pre-existing non-conforming structure and/or use. The Applicant's counsel suggests that because the existing height of the Property currently exceeds the height restriction that is permitted in an S–7 single family residential district under the Town's Zoning By-law, the proposed installation would simply amount to an alteration of a pre-existing non-conforming structure and/or use. However, as Mr. Hitchcock pointed out, the proposed installation cannot be con-

strued as an alteration of the current use of the Property. The Property houses a residential psychiatric hospital, and telecommunications antennas and related equipment on the roof bear no relation to the existing use of the Property.

In addition, the conditions for approval of a special permit under G.L. c. 40A, s. 9 and Section 9.05 of the Town's Zoning By-law have not been met. The proposal is not in harmony with the purpose and intent of the by-law; it is not an appropriate location for the installation of telecommunications antennas; and the use as developed can be expected to adversely affect the neighborhood. The By-law expressly prohibits wireless communications antennas and facilities on or within 50 feet of a residence or hospital, and the Property comprises a part of a private, residential hospital. Ms. Kahn, who has worked extensively with the Town in telecommunications related matters, testified that the Town has engaged in a lengthy, deliberative process over the past two years to determine how to best meet the needs of both the carriers and the community, and the result of that process was to recommend the installation of a DAS in South Brookline. The DAS, which is supported by the neighborhood, is expected not only to resolve the coverage gaps in South Brookline for all carriers, but also to accommodate future wireless technology. The cell nodes that would comprise the proposed DAS network are relatively visually insignificant in contrast to the more substantial macro sites that are routinely proposed by cell carriers. In addition, the Applicant's RF Engineer conceded that the proposed cell site would not solve the Applicant's entire coverage gap in South Brookline and that additional installations would likely be necessary in South Brookline.

Therefore, if the Board were to allow the requested relief in derogation of the referenced by-law, the result would undermine the process described by Ms. Kahn and be likely to launch a proliferation of significantly larger cellular installations within the neighborhood.

Alternatively, the Applicant is seeking a use variance. In order for a use variance to be granted, there must be a specific finding that "owing to circumstances relating to the soil conditions, shape or topography of [the] land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the . . . bylaw would involve a substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of the . . . bylaw." The Applicant's evidence does not support such a finding. Moreover, none of the criteria set forth in Section 9.09 of the Town's Zoning By-law appear to have been met, and, as the Board has found, the proposed cell site would adversely affect the neighborhood. Therefore, the Board is also proscribed from issuing a use variance in this matter.

(*Id.* at 7–8). According to the ZBA, its Decision was based upon these conclusions, as well as the findings of fact set forth above. (*Id.* at 8).

Additional factual details relevant to the court's analysis are described below.

### III. ANALYSIS

#### A. Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating motions for summary judgment, the court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." *Galloza v. Foy,* 389 F.3d 26, 28 (1st Cir.2004) (internal citation omitted). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Group, Inc. v. Ferre Dev., Inc.,* 241 F.3d 103, 107 (1st Cir.2001). "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." *Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc.,* 761 F.Supp. 194, 197–98 (D.Mass.1991).

### B. *Standard of Review Under the TCA*

The TCA "works like a scale that, inter alia, attempts to balance two objects of competing weight: on one arm sits the need to accelerate the deployment of telecommunications technology, while on the other arm rests the desire to preserve state and local control over zoning matters." *ATC Realty, LLC v. Town of Kingston, N.H.,* 303 F.3d 91, 94 (1st Cir.2002). *See also Town of Amherst v. Omnipoint Communications Enter., Inc.,* 173 F.3d 9, 13 (1st Cir.1999) (the TCA "is a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers."). "Accordingly, though state and local governments have power 'to deny . . .

request[s] to place, construct, or modify personal wireless service facilities,' their decisions must be 'in writing and supported by substantial evidence contained in a written record.' 47 U.S.C. § 332(c)(7)(B)(iii). This balance strengthens the decision making authority of local zoning boards, while protecting wireless service providers from unsupported decisions that stymie the expansion of telecommunication technology." *ATC Realty,* 303 F.3d at 94.

At issue in the instant case is whether the ZBA's Decision of June 27, 2006 was supported by substantial evidence contained in a written record as required by the TCA, 47 U.S.C. § 332(c)(7)(B)(iii). "The TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable zoning requirements." *Id.* (quoting *Omnipoint Communications MB Operations, LLC v. Town of Lincoln,* 107 F.Supp.2d 108, 115 (D.Mass. 2000)). "The test is fairly deferential to the opinion of the zoning authority and a reviewing court is not free to substitute its own judgment for that of the local authority, even if the reviewing court would have decided the issue differently as an original matter." *Omnipoint Communications,* 107 F.Supp.2d at 115. Therefore, "[j]udicial review under this standard, 'even at the summary judgment stage, is narrow.'" *Sw. Bell Mobile Sys., Inc. v. Todd,* 244 F.3d 51, 58 (1st Cir.2001) (quoting *Associated Fisheries of Me., Inc. v. Daley,* 127 F.3d 104, 109 (1st Cir.1997)).

In evaluating the local zoning authority's decision under the substantial evidence standard, "a court must consider the record as a whole, including contrary evidence. However, the possibility of drawing two inconsistent conclusions does not

mean that the zoning authority's decision is not supported by substantial evidence.... The critical inquiry under the substantial evidence test is whether a zoning authority's denial is based on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' or whether it is based upon unsubstantiated conclusions." *Omnipoint Communications,* 107 F.Supp.2d at 115 (quoting *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 494 (2d Cir.1999)) (citations omitted). Thus, the ZBA's decision will withstand scrutiny "if it is 'supported by ... more than a scintilla of evidence.' " *ATC Realty,* 303 F.3d at 94 (quoting *Cellular Tel. Co.,* 166 F.3d at 494). Applying this standard to the facts of the instant case, this court concludes that reasonable minds would find adequate evidentiary support for the ZBA's denial of Nextel's application.

## C. *Application of the Substantial Evidence Standard to the ZBA's Decision*

In its Decision, the ZBA determined that Nextel was not entitled to either a special permit or a use variance under the Town's By–Law. This court finds that these conclusions were supported by substantial evidence.

### 1. *The Decision to Deny Nextel a Special Permit*

■ The ZBA provided several reasons for its decision to deny Nextel a special permit, including that Nextel's proposal could not be construed as an alteration of a pre-existing nonconforming use, was not in harmony with the purpose and intent of the By–Law, was not an appropriate location for the installation of telecommunications antennas and can be expected to adversely affect the neighborhood. (Pl.'s Ex. C. at 7). The Board's Decision will

satisfy the substantial evidence requirement of the TCA as long as there is substantial evidentiary support for one or more of these reasons. *See Sw. Bell Mobile Sys.,* 244 F.3d at 60 n. 3 (declining to address whether there was substantial support for alternative reasons for zoning authority's denial of plaintiff's permit application where one reason was supported by substantial evidence). As detailed herein, the Board's conclusion that the proposed installation was unrelated to the existing nonconforming use of the Property as a hospital, and its interpretation of the By–Law as precluding the Board from issuing a special permit for a new use, are reasonable and amply supported by the record. In addition, the Board's conclusion that the proposed installation did not otherwise comply with the requirements for a special permit because antennas are prohibited on hospitals is also supported by the record. Therefore, there is no basis to disturb the ZBA's denial of Nextel's request for a special permit.

Under Massachusetts law, "[s]pecial permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and shall be subject to general or specific provisions set forth therein...." Mass. Gen. Laws ch. 40A, § 9. The specific provisions of Brookline's Zoning By–Law require a special permit to "alter[ ], reconstruct[ ], or enlarge[ ]" a preexisting nonconforming "use or structure housing a use," such as the Property, which is nonconforming because it is a hospital located in a residential zone. *See* By–Law § 8.02(1) ("A use, or structure housing a use, which does not conform to the use regulations of Article IV, but which did conform to all applicable regulations when initially established shall not be altered, reconstructed, or enlarged and no building permit shall be granted therefore except in accordance with the

following provisions").[4] Moreover, any change approved by the ZBA must meet the requirements of Article IX of the By–Law, including the requirement that the "specific site is an appropriate location for such a use, structure, or condition." By–Law §§ 8.02(1)(a), 9.05(1)(a). There is substantial evidence to support the ZBA's decision that neither of these requirements was met.

All of the relevant Town Boards and representatives interpreted the By–Law as precluding a special permit from being used to approve a new use. In addition, they all concluded that "telecommunication antennas and related equipment on the roof bear no relation to the existing use of the Property." (Pl.'s Ex. C at 7). For example, in its report to the ZBA, the Planning Board stated that Nextel's proposed facility would require a use variance rather than a special permit. (Ex. C to Pl.'s Ex. C at 2). Mr. Greenhill from the Planning Board confirmed this position during the ZBA hearing. (Pl.'s Ex. B at 61). Moreover, Mr. Hitchcock from the Brookline Building Department testified that telecommunications equipment could not be considered an extension of a nonconforming use because it had no relationship to the use of the Property as a hospital. (Id. at 62–63). The Board specifically agreed with Mr. Hitchcock's interpretation of the By–Law in concluding that the proposed installation could not be construed as an alteration of the current use of the Property. (Pl.'s Ex. C at 7).

The Board's informed interpretation of its own By–Law is reasonable and is entitled to deference. See Omnipoint Communications, 107 F.Supp.2d at 115–16 (deferring to zoning authority's determination that wireless communications facility could not be construed as an extension of a then existing nonconforming use as a gasoline station under applicable zoning laws authorizing issuance of special permits). Thus, its denial of Nextel's application for a special permit does not violate the substantial evidence requirement of the TCA. See id. at 115 (no violation of substantial evidence standard where Board of Appeals' denial of zoning relief was based on reasonable legal interpretation of relevant by-law).

Even if Nextel's application could be deemed to be for the alteration, reconstruction or enlargement of a preexisting use or structure housing a use, there is substantial evidence to support the denial of the application. The ZBA could only approve special permits which complied with the provisions of Article IX of the By–Law. See By–Law § 8.02(1)(a) (requiring that any alteration, reconstruction or enlargement "be approved by the Board of Appeals by special permit under the provisions of Article IX"). Article IX provides in relevant part as follows:

> The Board of Appeals shall not approve any such application for a special permit unless it finds that in its judgment all of the following conditions are met:
>
> a.  The specific site is an appropriate location for such a use, structure, or condition.

By–Law § 9.05(1).

It is undisputed that the By–Law prohibits wireless communications facilities on hospitals and that Nextel's proposal would involve the installation of such a facility on a hospital. (Pl.'s Ex. A, Tab 3 at 1; DF ¶ 3). Accordingly, as Town counsel advised the ZBA during the hearing, under the express provisions of the By–Law, the Property is not an appropriate location for

---

4.  Relevant portions of Brookline's Zoning By–Law are attached as Exhibit A to the Defen- dants' Memorandum of Law (Docket No. 20).

Nextel's proposed installation. (Pl.'s Ex. B at 30). For this additional reason, the ZBA's conclusion that Nextel's application did not qualify for a special permit is supported by the record. (*See* Pl.'s Ex. C at 7).

## 2. *The Decision to Deny Nextel a Use Variance*

■ The ZBA also provided several reasons for its decision to deny Nextel a use variance, including that the evidence presented by Nextel could not support the finding necessary for the issuance of a use variance under state law, that Nextel's proposal had not met the criteria for a use variance set forth in Section 9.09 of the Town's By–Law, and that the proposed cell site would adversely affect the neighborhood. (Pl.'s Ex. C at 8). This court finds that the record supports the Board's determination that Nextel did not satisfy the By–Law's requirements for a use variance.

Pursuant to state statutory law, "[e]xcept where local ordinances or by-laws shall expressly permit variances for use, no variance may authorize a use or activity not otherwise permitted in the district in which the land or structure is located . . . ." Mass. Gen. Laws ch. 40A, § 10. Brookline's Zoning By–Law authorizes the ZBA to grant a use variance only if certain specified conditions have been met. Specifically, Section 9.09 of the By–Law provides in relevant part as follows:

The Board of Appeals may grant a use variance, provided statutory variance requirements are met, only on a lot that conforms to one or more of the following conditions:

a. Expiration of the time limit specified for a previously granted use variance.

b. Existence prior to January 1, 1977, of uses of the same general classification as the use variance applied for, on lots adjoining the lot in question on both sides, or, if the lot in question is a corner lot, on both the side and the rear.

c. Existence on an adjoining lot of a use of such nuisance characteristics as to render unreasonable any conforming use of the lot in question.

d. Existence on the lot in question of a structure(s) of appearance compatible with its vicinity which is either of historical or architectural significance which shall be preserved or restored in a manner sufficient to justify the relief granted herein, and/or contains gross floor area excessive for the use permitted in the district wherein the structure is located, and which can reasonably be maintained as a visual and taxable asset only if a nonconformity of use is permitted. A special permit under § 5.09 shall be required in conjunction with every variance request pursuant to this subparagraph.

By–Law § 9.09(1).

■ Nothing in the record suggests that the Property satisfied any of the specified conditions, and Nextel did not attempt to demonstrate that its proposal complied with one or more of the conditions. Rather, in its application, Nextel acknowledged that "the By-law also delineates several conditions and/or limitations for the granting of a use variance" and it conceded that "[n]one of those conditions and/or limitations is applicable to the instant situation." (Pl.'s Ex. A, Tab 3 at 7). Instead of attempting to show how its proposal complied with the use variance provisions of the By–Law, Nextel argued, without citation, that "[a]pplication of § 9.09 to the new installation of a telecommunications facility would effectively bar all carriers

from receiving approval for a use variance and thus violate the [TCA]." (*Id.*).[5] Thus, the ZBA's conclusion that Nextel had not met the criteria set forth in Section 9.09 of the By–Law was consistent with Nextel's own submission.

Additionally, during the hearing, counsel for Brookline noted that Nextel had not attempted to show that its proposal would comply with the By–Law's conditions for a use variance, and she advised the ZBA that she believed the requirements had not been met. (Pl.'s Ex. B at 39–40). The Board was entitled to credit the advice of Town counsel, and its determination that Nextel had failed to satisfy one or more of the conditions required for the issuance of a use variance constituted a reasonable application of the existing By–Law. Thus, the ZBA's decision to deny Nextel a use variance was based on substantial evidence.

### 3. *Alternative Sites*

■ Both parties agree that the ZBA cannot deny Nextel a use variance if doing so would have the effect of prohibiting wireless services in violation of the TCA. (Pl.'s Reply Mem. (Docket No. 24) at 2; Defs.' Mem. at 11). However, in the instant case, the ZBA expressly found that "[t]he Town's DAS proposal is expected to resolve the existing coverage gaps in South Brookline and is a feasible alternative to the proposed cell site." (Pl.'s Ex. C at 5). It also found that Nextel had not

fully investigated the DAS proposal. (*Id.*). These findings were supported by substantial evidence.

As demonstrated by its Decision, the Board credited the testimony of Janice Khan that the DAS proposal is expected to resolve coverage gaps for all carriers and to accommodate future wireless technology. (Pl.'s Ex. C at 7–8). At the hearing, Ms. Kahn testified that DAS will meet the needs of people in their homes, that the number of nodes used in the system could be increased to meet the increasing demand for wireless services, that the system would be reliable and that it could reconfigure itself to satisfy coverage needs. (DF ¶ 8; Pl.'s Ex. B at 59). This evidence is adequate to support the ZBA's determination that DAS presented a feasible alternative to Nextel's proposal.[6]

Nextel contends that Ms. Kahn's lack of technical expertise required the Board to disregard her testimony and to credit the testimony of Nextel's radio frequency engineer, David Stoll. This court disagrees. In the instant matter, Ms. Kahn was not simply expressing a lay opinion. Rather, the evidence shows that Ms. Kahn serves on Brookline's Wireless Advisory Committee, was one of the architects of the Town's By–Law regulating the siting of telecommunications facilities, and has been involved in every effort to address the coverage needs of south Brookline. (DF ¶ 8; Pl.'s Ex. B at 41). Additionally, the record demonstrates that the DAS proposal was

---

5. Even if, as Nextel argues, the use variance By–Law would preclude a carrier from ever obtaining a use variance (a conclusion which the Town disputes), that would not necessarily lead to a violation of the TCA. The TCA's effective prohibition provision does not require that carriers have access to use variances, but rather prohibits towns from using their by-laws to ban wireless communications facilities "in effect," even if there is substantial evidence for the denial of the application under the by-law. *See Town of Amherst,* 173

F.3d at 14. As detailed below, the Town has not effectively prohibited such facilities.

6. In its brief, Nextel refers to Brookline's proposed DAS system as "hypothetical" and suggests that it may never be constructed. (Pl.'s Mem. at 11). However, at oral argument Nextel did not dispute that the Town has a builder for the system and expects to begin construction.

recommended after a lengthy Town effort to solve coverage gaps in the area, which included the hiring of an expert to investigate technically feasible options. (DF ¶ 9; Ex. D to Pl.'s Ex. C at 1). Therefore, Ms. Kahn's testimony reflected her extensive involvement in wireless communications siting in Brookline, as well as her substantial knowledge of the Town's process for addressing the gap in coverage, and the ZBA's reliance on her testimony was appropriate. *Compare Nextel Communications of the Mid–Atlantic, Inc. v. Town of Sudbury, Mass.*, No. Civ. A. 01–11754–DPW, 2003 WL 543383, at *12 (D.Mass. Feb. 26, 2003) (finding ZBA chairperson's statements that he had driven around town placing calls on plaintiff's phone and had experienced no trouble initiating or receiving calls inadequate to support Board's conclusion that existing coverage was sufficient).

▮ In addition, the record supports the ZBA's decision not to credit Mr. Stoll's conclusory statements. "For a telecommunications provider to argue that a permit denial is impermissible because there are no alternative sites, it must develop a record demonstrating that it has made a full effort to evaluate the other available alternatives and that the alternatives are not feasible to serve its customers." *Sw. Bell Mobile Sys.*, 244 F.3d at 63. Here, Mr. Stoll's conclusion that the DAS system would not meet Nextel's coverage objective because it would not provide reliable indoor service was not supported by any underlying facts or analyses. He had only a cursory meeting with the builder of the system the day before the ZBA meeting. As Attorney Sousa informed the Board, *Nextel did not have enough information to determine whether it could use the DAS system.* (*See* Pl.'s Ex. B at 23). To the extent that the scope of the DAS system was still a work in progress, Nextel did not explain why modifications could not be made to solve Nextel's coverage gap. Thus, the record supports the ZBA's findings that the DAS system was a viable alternative and that Nextel had failed to investigate the feasibility of the DAS proposal in any significant way.[7]

## IV.  CONCLUSION

For all of the reasons detailed herein, this court concludes that there is substantial evidence in the record to support the ZBA's Decision denying Nextel's application for a special permit and/or use variance. Accordingly, this court recommends to the District Judge to whom this case is assigned that the "Plaintiff's Motion for Summary Judgment" (Docket No. 15) be DENIED and that the "Defendants' Cross Motion for Summary Judgment on Count I" (Docket No. 19) be ALLOWED.[8]

September 12, 2007.

7.  Nextel contends that the ZBA's determination that allowing Nextel the requested relief would undermine the Town's process and likely launch a proliferation of significantly larger cellular installations in south Brookline was not supported by substantial evidence. (Pl.'s Mem. at 11). Additionally, Nextel asserts that the ZBA's Decision was not based on substantial evidence to the extent that it reflected a judgment regarding aesthetics. (*Id.* at 12). Because this court has determined that the ZBA articulated other reasons

for its decision to deny Nextel's application, and that those reasons were supported by substantial evidence, it is unnecessary at this time to address these arguments. *See Sw. Bell Mobile Sys.*, 244 F.3d at 60 n. 3 (finding that one of zoning authority's reasons for denying application was based on substantial evidence and declining to evaluate whether there was substantial evidence for other reasons).

8.  The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party

